[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 21, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11141

_____

D. C. Docket No. 05-22689-CV-PCH

IN RE:


PATRICIO CLERICI,

                                                              Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 21, 2007)**

Before TJOFLAT, HULL and BOWMAN,[*] Circuit Judges.

HULL, Circuit Judge:

   This case involves the authority of federal district courts to assist in the

production of evidence—here, sworn answers to written questions—for use in a

foreign court.  Appellant Patricio Clerici ("Clerici") appeals the district court's

_____

   [*]Honorable Pasco M. Bowman II, United States Circuit Judge for the Eighth Circuit,
sitting by designation.

January 27, 2006 order denying his motion to vacate the district court's October 12, 2005 order granting the government's application, filed pursuant to 28 U.S.C. § 1782, for judicial assistance to foreign tribunals. In its January 27, 2006 order, the district court appointed an Assistant United States Attorney to obtain sworn answers from Clerici to the questions posed in the Panamanian Court's letter rogatory. After review and oral argument, we affirm.

## I. BACKGROUND

### A. Clerici's Lawsuit in Panama

Clerici is a Panamanian citizen and merchant who also resides in Miami, Florida. In 1998 in Panama, Clerici initiated a civil lawsuit against NoName Corporation ("NoName") and others in the Second Court of the Circuit of Colon, Civil Branch, Republic of Panama ("Panamanian Court"). As part of these proceedings, Clerici requested the attachment of NoName's property, which the Panamanian Court granted by judicial decree. As a result, certain property of NoName was seized.

Thereafter, on August 27, 1999, NoName filed a motion to dismiss Clerici's Panama lawsuit, alleging that Clerici had failed to prosecute his civil lawsuit. On February 11, 2000, the Panamanian Court granted NoName's motion to dismiss Clerici's lawsuit, and the attachment of NoName's property was vacated. The

resolution of Clerici's civil lawsuit was appealed and affirmed by Panama's First Superior Court of Justice on November 13, 2000.

## B.   NoName's Proceedings in Panama

On April 27, 2001, NoName filed an incidental proceeding in the Panamanian Court claiming damages arising from Clerici's civil lawsuit and the attachment proceeding.  Specifically, NoName alleged that it was a new business in Panama and in the process of expanding, but that Clerici's lawsuit "changed the commercial image of the company."  NoName alleged that Clerici's lawsuit negatively impacted NoName's credit with various banks and its image in the community, resulted in the denial of its request for an increase in credit, and led to lost sales and profits.  On September 27, 2002, the Panamanian Court entered Judicial Decree No. 1166, in which Clerici was "condemn[ed] . . . to pay" NoName, in balboas,[1] 1,996,598.00 in damages and 294,589.70 in costs.  Thus, NoName obtained a sizable foreign judgment against Clerici in Panama.

It is undisputed that NoName's foreign judgment against Clerici has not been domesticated and is not currently enforceable in Florida.  While NoName filed a domestication action, NoName never pursued it.[2]

---

[1]Balboas are the legal currency of the Republic of Panama.  One balboa is the equivalent of one U.S. dollar.

[2]On January 22, 2004, NoName filed a state court petition to domesticate its foreign judgment in the state circuit court for the Eleventh Judicial Circuit of Florida.  NoName attached

3

Subsequently, on January 27, 2005, NoName filed a post-judgment petition in the same Panamanian Court where NoName had obtained the sizable judgment against Clerici. NoName's post-judgment petition was entitled "Ordinary Proceeding Involving More Than a Certain Amount (Incident of Damages) Petition (Complementary Execution)."

In its petition, NoName requested that the Panamanian Court "begin the procedure complementary to the execution" of its judgment "pursuant to the provisions of Article 1049 and 1050 of the Judicial Code" of Panama. NoName's petition identified the following questions to be asked to Clerici regarding his assets and other financial matters "in the Republic of Panama or in any other part of the world":

1.    What properties (real or personal), credits, sustenance means or any other source of income did he [have] on April 27, 2001 in the Republic of Panama or in any other part of the world?

2.    What properties (real or personal), credits, sustenance means or any other source of income did he [have] on September 27, 2002 in the Republic of Panama or in any other part of the world?

---

to its petition, inter alia, (1) a copy of Judicial Decree No. 1166 in Spanish, and (2) a certified translation of the decree. On September 1, 2004, Clerici filed objections to the recognition and enforcement of NoName's alleged foreign judgment against him, arguing, inter alia, that NoName failed to prove that the decree document was a foreign judgment because it was not authenticated, that Clerici never received notice of the attempt to domesticate the judgment, and that the Panamanian Court lacked subject matter jurisdiction to enter the judgment. According to Clerici, the Florida state court scheduled a hearing on the matter, but NoName cancelled it, and the hearing has not been rescheduled.

4

3. What transfers, conveyances or donations has he made after April 27, 2001 and September 27, 2002 in the Republic of Panama or in any other part of the world? Please explain the reasons for these conveyances.

4. What is the amount of your patrimony to the date of this proceeding?

5. How and by what means are you going to fulfill the obligations acquired by means of Resolution No. 1166 of September 27, 2002, announced by the Second Court of the Civil Circuit of Colon (Republic of Panama), wherein you are condemned to pay an amount greater than TWO MILLION BALBOAS (B/2,000,000.00) (legal currency of the Republic of Panama) to the corporation NONAME CORP.?

6. Are you in bankruptcy? Please explain the reasons.

7. How many nationalities or citizenships do you have up to date?

8. In what countries do you file income-tax returns?

9. With what financial entities (banks, investment houses, to mention some) in the world have you had or have business relations or a relation as a client?

Because Clerici resided in the United States, NoName's petition suggested that the Panamanian Court obtain this evidence through the issuance of a letter rogatory.[3]

The Panamanian Court granted NoName's petition, finding that

the petition is based in the provisions of Article 1049 of the Judicial Code, allowing the executant, when the obligation is not paid within

---

[3] "A letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 248 n.1, 124 S. Ct. 2466, 2473 n.1 (2004) (quotation marks and alteration omitted).

the respective term, to interrogate the debtor, or request the judge to do it, in order that under oath he may answer the questions made in relation to his properties, rights, credits, sustenance means, source of income, as from the date of this claimed obligation.

Because Clerici resided in Florida, the Panamanian Court issued a letter rogatory to the "Judicial Authorities of the City of Miami" requesting assistance with obtaining answers from Clerici, while under oath, to NoName's proposed questions. The Panamanian Court's letter rogatory stated that the evidence obtained "will be used in the civil process before this court," and the Panamanian Court cited as authority for its request the Inter-American Convention Regarding Letters Rogatory ("the Convention"). The questions listed in the Panamanian Court's letter rogatory were substantially similar to the questions proposed by NoName.[4]

## C.    Section 1782 Application in District Court

On October 11, 2005, the United States filed an <u>ex parte</u> application in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1782, for an order appointing an Assistant United States Attorney as a commissioner for the purpose of obtaining the evidence requested by the Panamanian Court in its letter rogatory. Section 1782(a) provides that the district

---

[4]The only significant difference is that the Panamanian Court amended the questions in order to reflect that October 10, 2002, was the date of the claimed obligation and the date from which Clerici could be questioned about his financial dealings.

court where Clerici resides "may order him to give his testimony or statement . . . for use in a proceeding in a foreign . . . tribunal." 28 U.S.C. § 1782(a).[5] On October 12, 2005, the district court granted the government's § 1782 application and appointed a commissioner "to take such steps as are necessary to obtain the evidence in conformity with the Letters Rogatory." The court-appointed commissioner then sent a letter to Clerici requesting that he sit for a deposition to answer the Panamanian Court's questions.

On December 27, 2005, Clerici filed a memorandum in opposition to the government's application. The district court construed Clerici's memorandum as a motion to vacate its previous order granting the § 1782 application and appointing

---

[5]Section 1782(a) provides:
[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
28 U.S.C. § 1782(a). As noted earlier, see supra note 2, NoName did initiate a domestication action in Florida but then abandoned that action. The fact that NoName has attempted another means of obtaining evidence from Clerici does not preclude the subsequent request for assistance under § 1782.

7

a commissioner. In the motion, Clerici asserted that NoName's judgment against him is invalid, is being challenged in Panama, and in any event, is unenforceable in Florida because it has not been domesticated. Clerici argued that the application should be denied because (1) the Panamanian Court's letter rogatory does not contain the necessary documentation under the terms of the Convention; and (2) § 1782 cannot be used to enforce a foreign judgment pursuant to a letter rogatory. Clerici also argued that, even if § 1782 authorized the requested assistance, the district court should, in its discretion, decline to grant judicial assistance because (1) the letter rogatory is an attempt to enforce a foreign judgment that has not been domesticated, and therefore, is unenforceable; and (2) the application is "unduly intrusive."

In response, the government argued that its application for judicial assistance was properly made pursuant to § 1782 despite the content of the Panamanian Court's letter rogatory. The government explained that, although the letter rogatory claimed to be sent under the terms of the Convention, "[a]s a matter of comity and assistance to foreign litigants," it generally treated such "mislabel[ed]" requests for assistance as requests made pursuant to § 1782.

The government also emphasized that the Panamanian Court was not requesting that the district court enforce the foreign judgment. Rather, the

8

government pointed out that the Panamanian Court was seeking only assistance in obtaining evidence and that this was a proper use of § 1782.

The district court denied Clerici's motion to vacate. First, the district court found that, "[n]otwithstanding the form used to draft the Panamanian [C]ourt's request," the application for judicial assistance was filed pursuant to § 1782, and therefore, did not have to comply with the requirements of the Convention.[6] Next, the district court rejected Clerici's argument that § 1782 was being used to enforce a foreign judgment through a letter rogatory. Instead, the district court found that the § 1782 application and exhibits "demonstrate clearly that the Panamanian [C]ourt is seeking assistance in obtaining 'a sworn statement' from [Clerici]: it is not requesting that [the district court] enforce the judgment NoName received against him." The district court concluded that this was a proper request under § 1782 for assistance in procuring evidence. Finally, the district court declined to exercise its discretion to deny the requested assistance, noting that Clerici still was "free to argue against a domestication of the Panamanian judgment in Florida state court and to proceed with his appeal of the foreign judgment in Panama."

---

[6]It is not clear whether the Panamanian Court's letter rogatory complied with the terms of the Convention. Nevertheless, we need not reach that question because we conclude that the district court properly treated the government's application as a § 1782 application for judicial assistance. Therefore, like the district court, we reject Clerici's argument on appeal that the Panamanian Court's letter rogatory was invalid because it did not include certain attachments allegedly required under the Convention.

9

As to the scope of the evidence requested, the district court noted that Clerici had argued, in the alternative, that it was "unduly intrusive" but had "failed to identify specifically the terms of the request which he contends are overly broad, a legal basis for these contentions, and how the scope of the request should be narrowed." The district court then denied Clerici's "'unduly intrusive' argument without prejudice." The district court indicated that if Clerici wished to pursue this argument, Clerici "shall file a motion to limit the scope of the request on or before Monday, February 6, 2006."

Clerici did not file a motion to limit the scope of the request. Rather, on February 9, 2006, Clerici timely appealed the district court's order denying his motion to vacate the district court's earlier order granting the government's § 1782 application for judicial assistance. Clerici also moved for a stay pending appeal, which the district court granted.

## II. STANDARD OF REVIEW

Beginning in 1948, "Congress substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to 28 U.S.C. § 1782. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-48, 124 S. Ct. 2466, 2473 (2004) (reviewing at length the 150-year history of congressional efforts to provide judicial assistance to foreign tribunals and

10

amendments designed to broaden the scope of § 1782). "The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." Lo Ka Chun v. Lo To, 858 F.2d 1564, 1565 (11th Cir. 1988).

Because "Congress has given the district courts such broad discretion in granting judicial assistance to foreign countries, this court may overturn the district court's decision only for abuse of discretion." United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001) (quotation marks omitted). This review is "extremely limited and highly deferential." Id. Further, "[t]his deferential standard is identical to that used in reviewing the district court's ordinary discovery rulings." Id.

However, "to the extent the district court's decision is based on an interpretation of law, our review is de novo." Id. at 1319 n.8. Thus, this Court reviews de novo the district court's interpretation of a treaty or a federal statute such as § 1782. In re Comm'r's Subpoenas, 325 F.3d 1287, 1292 (11th Cir. 2003).

## III. DISCUSSION

### A. Section 1782

A district court has the authority to grant an application for judicial assistance if the following statutory requirements in § 1782(a) are met: (1) the request must be made "by a foreign or international tribunal," or by "any interested person";[7] (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).[8] If these requirements are met, then § 1782 "authorizes, but does not require, a federal district court to provide assistance . . . ." Intel, 542 U.S. at 255, 124 S. Ct. at 2478; see also United Kingdom, 238 F.3d at 1319 ("[A] district court's compliance with a § 1782 request is not mandatory.").

Here, Clerici does not dispute that the Panamanian Court is a foreign tribunal or that he resides within the Southern District of Florida. Therefore, the first and fourth requirements for a proper request under § 1782 are met.

---

[7]A request for judicial assistance from a foreign tribunal can be, but is not required to be, made through the issuance of a letter rogatory. See 28 U.S.C. § 1782(a).

[8]See supra note 5 (quoting 28 U.S.C. § 1782(a)).

As to the second statutory requirement—that the request must seek evidence—Clerici argues that the Panamanian Court is not seeking evidence, but rather is attempting to enforce its judgment through a § 1782 request. We disagree because the Panamanian Court asked for assistance in obtaining only Clerici's sworn answers to questions regarding his assets and other financial matters. The district court recognized this key distinction and properly concluded that the request for assistance was limited to seeking evidence from Clerici, and therefore, was proper under § 1782. Unlike the requests for judicial assistance in the cases cited in Clerici's brief, see, e.g., In re Letter Rogatory Issued by the Second Part of the III Civil Reg'l Court of Jabaquara/Saude, Sao Paulo, Braz., No. 01-MC-212, 2002 WL 257822 (E.D.N.Y. Feb. 6, 2002) (denying request to order judgment-debtor to deposit $8,642,802.94 into an account with the court); Tacul, S.A. v. Hartford Nat'l Bank & Trust Co., 693 F. Supp. 1399, 1399-1400 (D. Conn. 1988) (quashing writ of execution against the assets of judgment-debtor issued by the clerk based on a letter rogatory), the Panamanian Court never requested that the district court sequester, levy on, or seize control of Clerici's assets or otherwise help enforce NoName's judgment.[9] The Panamanian Court requested only

_____

[9]The other cases cited in Clerici's brief, see In re Letter Rogatory Issued by the Second Part of the III Civil Reg'l Court of Jabaquara/Saude, Sao Paulo, Braz., No. M13-72, 2001 WL 1033611 (S.D.N.Y. Sept. 7, 2001); In re Civil Rogatory Letters Filed by Consulate of the U.S. of Mex., 640 F. Supp. 243 (S.D. Tex. 1986), are equally distinguishable and warrant no further

13

assistance in obtaining evidence—sworn answers from Clerici to written questions—and this is the primary purpose of § 1782. Therefore, the second requirement for a proper request under § 1782 is met.

As to the third statutory requirement, we reject Clerici's contention that the requested evidence was not "for use in a proceeding" before the Panamanian Court. Here, there is a proceeding currently pending before the Panamanian Court that allows NoName or the Panamanian Court to question Clerici under oath about his properties, rights, credits, sustenance means, and other sources of income from the date of his court-ordered obligation. Had Clerici been residing in Panama, NoName or the Panamanian Court would have been able to interrogate Clerici directly with the questions proposed by NoName. Because Clerici was residing in Florida, however, the Panamanian Court issued a letter rogatory seeking international assistance in order to obtain this evidence. The Panamanian Court's letter rogatory itself stated that this evidence "will be used in the civil process before this court." Such a request is clearly within the range of discovery authorized under § 1782 and comports with the purpose of the statute to provide assistance to foreign tribunals.

Given the pending proceeding before the Panamanian Court, Clerici is

discussion. Clerici has not cited any legal authority that suggests obtaining evidence "in aid of execution" of a foreign judgment is the legal equivalent of executing on that foreign judgment.

14

reduced to arguing that a "proceeding" means an adjudicative proceeding, and thus, NoName's post-judgment petition regarding a judgment that already has been rendered is not a "proceeding" within the meaning of the statute. This argument is also without merit for several reasons.[10] First, § 1782 only states that the evidence must be "for use in a proceeding," and nothing in the plain language of § 1782 requires that the proceeding be adjudicative in nature. See 28 U.S.C. § 1782(a). In fact, the statute specifically provides that the evidence obtained through § 1782 can be used in "criminal investigations conducted before formal accusation," even though such investigations are not adjudicative proceedings. Id. (emphasis added).

Second, the Supreme Court has recognized the "broad range of discovery" authorized under § 1782 and has held that § 1782 is not limited to proceedings that are pending or imminent. Intel, 542 U.S. at 259, 124 S. Ct. at 2480;[11] see also Hans Smit, American Assistance to Litigation in Foreign and International

---

[10]Clerici relies on two decisions from the Second Circuit, Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24 (2d Cir. 1998), and In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India, 385 F.2d 1017 (2d Cir. 1967), for the argument that a "proceeding," for purposes of § 1782, must be a proceeding that is "adjudicative in nature." We find these cases unpersuasive and, for the reasons stated above, decline to impose a requirement that the foreign proceeding be adjudicative in nature.

[11]In concluding in Intel that § 1782 is not limited to proceedings that are pending, the Supreme Court emphasized that, in 1964, "Congress deleted the words 'in any judicial proceeding pending in any court in a foreign country,' and replaced them with the phrase 'in a proceeding in a foreign or international tribunal.'" 542 U.S. at 248-49, 124 S. Ct. at 2474. In 1996, Congress further amended § 1782(a) to add, after the reference to "foreign or international tribunal," the words "including criminal investigations conducted before formal accusation." Id. at 249, 124 S. Ct. at 2474.

15

Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 9 (1998) ("The purpose of Section 1782 is to liberalize the assistance given to foreign and international tribunals."). Rather, the proceeding for which discovery is sought need only be "within reasonable contemplation." Intel, 542 U.S. at 259, 124 S. Ct. at 2480. Here, the proceeding actually was filed before the letter rogatory was even issued, and the third statutory requirement for a proper request under § 1782 is satisfied.

Because all four statutory requirements are met, the Panamanian Court's request for assistance in obtaining Clerici's sworn answers for use in the proceeding in Panama was proper under § 1782.[12] Accordingly, the district court had authority to grant the § 1782 discovery application.

Even so, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." Intel, 542 U.S. at 264,

---

[12]Before Intel, this circuit had imposed the additional requirement that "the district court must decide whether the evidence would be discoverable in the foreign country before granting assistance." In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated by Intel, 542 U.S. at 259-62, 124 S. Ct. at 2480-82; see also Comm'r's Subpoenas, 325 F.3d at 1293 (citing Trinidad and Tobago); Lo Ka Chun, 858 F.2d at 1566 (relying on Trinidad and Tobago). However, other circuits had not imposed a foreign-discoverability requirement. See Intel, 542 U.S. at 253 n.7, 124 S. Ct. at 2476 n.7 (listing circuit decisions). In Intel, the Supreme Court resolved the circuit conflict, holding that § 1782 does not impose a foreign-discoverability requirement. Id. at 253, 124 S. Ct. at 2476. The Supreme Court emphasized that § 1782(a) itself shields privileged material. Id. at 260, 124 S. Ct. at 2480. The Supreme Court then concluded that "[b]eyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." Id.

16

124 S. Ct. at 2482-83 ("[A] district court's compliance with a § 1782 request is not mandatory." (quoting United Kingdom, 238 F.3d at 1319)). Once the prima facie requirements are satisfied, the Supreme Court in Intel noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Id. at 264-65, 124 S. Ct. at 2483. The Supreme Court in Intel added that "unduly intrusive or burdensome requests may be rejected or trimmed." Id. at 265, 124 S. Ct. at 2483.

Our review of the Intel factors reveals that none of the factors favors Clerici, and that the district court did not abuse its discretion in granting the § 1782 application.[13]

_____

[13]The district court's order notes that Clerici did not argue the first and second Intel factors before the district court. As to the third factor, the district court pointed out that

As to the first Intel factor, because Clerici is a party in the foreign proceeding, this factor normally would favor Clerici and suggest that § 1782 assistance is not necessary. See Intel, 542 U.S. at 264, 124 S. Ct. at 2483 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.").[14] In this case, however, the first factor does not favor Clerici because Clerici has left Panama and the Panamanian Court cannot enforce its order against Clerici directly while Clerici is in the United States. Given the particular factual circumstances in this case, the first Intel factor does not favor Clerici.

As to the second and third Intel factors, there is nothing in the record to suggest that the district court should have declined to grant the § 1782 application based on the nature of the foreign tribunal or the character of the proceedings in Panama, or that the Panamanian Court's request is merely an attempt to circumvent

---

Clerici had failed to identify any "proof-gathering restrictions" in the Panamanian Court case that would be circumvented if the § 1782 request were granted. Finally, as to the fourth factor, the district court noted that Clerici had failed to identify which portion of the request was overly broad and state how the scope of the request should be narrowed. On appeal, as in the district court, Clerici does not appear to address the Intel factors. This is not surprising since the factors do not favor Clerici.

[14]In many § 1782 cases, the person from whom discovery is sought is a nonparticipant in the foreign proceeding and outside the jurisdiction of the foreign tribunal. See, e.g., United Kingdom, 238 F.3d at 1314 (seeking sensitive law enforcement documents possessed by the United States to be used in a criminal prosecution in England); Lo Ka Chun, 858 F.2d at 1565 (seeking the issuance of subpoenas duces tecum to residents of the United States who were non-party witnesses in an action pending in Hong Kong); Trinidad and Tobago, 848 F.2d at 1152 (seeking authenticated copies of bank records from non-party bank).

foreign proof-gathering restrictions. Rather, these factors all support the district court's decision to grant the § 1782 application given that the foreign tribunal here is the Panamanian Court and the Panamanian Court itself issued the letter rogatory requesting assistance due to Clerici's presence in the United States.

Finally, as to the fourth Intel factor—whether the § 1782 request is unduly intrusive—the district court's order granting the § 1782 application specifically indicated that if Clerici wished to pursue his "unduly intrusive" argument, Clerici should file a motion to limit discovery. Clerici never did so and instead chose to appeal the grant of any discovery whatsoever. On appeal, as in the district court, Clerici does not identify the terms of the written request that are overly broad or assert how the scope of the request should be narrowed. Thus, we, like the district court, have no occasion to address the scope of the Panamanian Court's discovery request.

In sum, the district court had authority to grant the § 1782 application, and Clerici has not shown that the district court abused its discretion in doing so.

## B. Federal Rules of Civil Procedure

Clerici alternatively asserts that, even if the district court had authority to grant the discovery application under § 1782, Rule 69(a) of the Federal Rules of Civil Procedure bars any § 1782 discovery in this case. More specifically, Clerici

contends that (1) any evidence must be obtained in accordance with the Federal Rules of Civil Procedure; (2) Federal Rule 69(a) is applicable because the Panamanian Court is seeking discovery to aid NoName in the execution of its judgment; and (3) no discovery is authorized under Rule 69(a) until NoName obtains a valid, domesticated judgment in this country. We agree that the discovery rules in the Federal Rules of Civil Procedure apply here but conclude that Rule 69(a) does not. We explain why.

The district court's authority to order Clerici to give testimony "for use in a proceeding in a foreign . . . tribunal" stems from § 1782. 28 U.S.C. § 1782(a). Section 1782(a) then provides that, in its order granting § 1782 assistance, the district court "may prescribe the <u>practice and procedure</u> . . . for taking the testimony or statement or producing the document or other thing." <u>Id.</u> (emphasis added). This "practice and procedure" may be "in whole or part the practice and procedure of the foreign country or the international tribunal." <u>Id.</u> To the extent that the district court does not otherwise prescribe the practice and procedure, § 1782(a) provides that "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." <u>Id.</u>

Here, the district court's order did not prescribe the "practice and procedure"

20

for taking Clerici's testimony. Thus, under § 1782, this testimony must be taken "in accordance with the Federal Rules of Civil Procedure." Section 1782(a) refers to the Federal Rules, not for whether the district court can order Clerici to give any testimony, but only for the procedures or manner in which that testimony is to be taken.

Once discovery is authorized under § 1782, the federal discovery rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and the production of documents. For example, Rule 26(a)(5) authorizes the taking of testimony by deposition upon written questions,[15] and Rule 31 provides the specific practices and procedures for taking depositions upon written questions.[16] See Fed. R. Civ. P. 26(a)(5), 31.

In contrast, Rule 69(a) provides the process by which a judgment creditor can enforce a money judgment and authorizes post-judgment discovery in aid of execution of that judgment.[17] Fed. R. Civ. P. 69(a). Rule 69(a) itself does not

---

[15]As set forth earlier, the court-appointed commissioner sent a letter to Clerici requesting that he sit for a deposition to answer the Panamanian Court's written questions.

[16]As noted earlier, Clerici does not contend on appeal that the Panamanian Court's discovery request is unduly intrusive or otherwise violates the procedures in Rules 26-36. Rather, Clerici's sole argument is that Federal Rule 69(a) bars the taking of any testimony from him until after NoName domesticates its foreign judgment.

[17]Rule 69(a), entitled "Execution," provides as follows:
Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on

21

prescribe a practice and procedure for gathering evidence, but gives the judgment creditor the choice of federal or state discovery rules. Rule 69(a) simply authorizes a setting, post-judgment execution, in which discovery may take place, not the specific manner or procedures in which testimony should be taken or documents should be produced. Id. Because § 1782(a) refers to the Federal Rules only for the manner or procedure in which evidence is to be obtained, and Rule 69(a) prescribes no such manner or procedure, Rule 69(a) is inapplicable to § 1782 orders.

Even assuming arguendo that the discovery authorized by the district court's § 1782 order had to comply with Rule 69(a), Clerici's testimony still could be taken in this case as long as it was taken in accordance with the federal discovery rules. Rule 69(a) itself expressly permits a "judgment creditor" to obtain discovery

---

and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

Fed. R. Civ. P. 69(a) (emphasis added). The first sentence of Rule 69(a) provides that the process to enforce a money judgment is "a writ of execution." The second sentence of Rule 69(a) governs the execution procedure and mandates adherence to state-law execution procedures for levying on or seizing control of assets. As stressed earlier, the Panamanian Court is not executing on the judgment, but is seeking testimony about where Clerici's assets are located in Panama or in other countries. Thus, the first two sentences do not apply. However, the third sentence authorizes a judgment creditor to obtain post-judgment discovery from any person using all the discovery devices provided in the Federal Rules or by state practice. See Fed. R. Civ. P. 69 cmt. 1970 amendment.

22

"[i]n aid of the judgment or execution," and gives the "judgment creditor" the choice of federal or state discovery procedures to conduct post-judgment discovery. Fed. R. Civ. P. 69(a); see also F.D.I.C. v. LeGrand, 43 F.3d 163, 171 (5th Cir. 1995) (rejecting judgment debtor's argument that "state procedural rules apply to the determination of the post-judgment discovery issue"). Thus, similar to § 1782, Rule 69(a) gives a judgment creditor the option of taking a judgment debtor's testimony in accordance with the federal discovery rules. Nothing in Rule 69(a) conflicts with § 1782. In any event, the § 1782 request for judicial assistance here was made by the Panamanian Court after NoName had obtained a judgment against Clerici. At a minimum, nothing in Rule 69(a) requires domestication of a foreign judgment before discovery is permitted under § 1782 for use in a proceeding in a foreign tribunal.

Moreover, imposing a requirement that a foreign judgment first must be domesticated in the United States before a § 1782 application for assistance can be granted by the district court to a foreign court would render § 1782 unnecessary in many circumstances. For example, in this case after Clerici's testimony is taken regarding his assets in Panama (if he has assets in Panama), NoName may be able to execute on its judgment in Panama and have no need to domesticate its judgment in this country.

23

In sum, Rule 69(a) does not bar the discovery authorized in this case by the district court's § 1782 order just because NoName's foreign judgment has not been domesticated in the United States. However, we do agree that until NoName's foreign judgment has been domesticated in this country, NoName cannot sequester, levy on, or seize control of, any assets of Clerici in this country. Further, although we affirm the district court's order granting the § 1782 application, Clerici remains free to argue against domestication of the Panamanian Court's judgment in this country when and if NoName pursues domestication.

## IV. CONCLUSION

For all of these reasons, we affirm the district court's January 27, 2006 order denying Clerici's motion to vacate the district court's October 12, 2005 order granting the government's § 1782 application.

**AFFIRMED.**