[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13587

_____

ABSOLUTE ACTIVIST VALUE MASTER FUND LIMITED,
ABSOLUTE EAST WEST FUND LIMITED,
ABSOLUTE EAST WEST MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST FUND LIMITED,
ABSOLUTE GERMANY FUND LIMITED, et al.,

Plaintiffs-Appellees,

SUSAN ELAINE DEVINE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

2                       Opinion of the Court                     21-10668

D.C. Docket No. 2:15-cv-00328-JES-MRM

_____

_____

No. 22-11313

_____

ABSOLUTE ACTIVIST VALUE MASTER FUND LIMITED,
ABSOLUTE EAST WEST FUND LIMITED,
ABSOLUTE EAST WEST MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST FUND LIMITED,
ABSOLUTE GERMANY FUND LIMITED, et al.,

Plaintiffs-Appellees,

SUSAN ELAINE DEVINE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:15-cv-00328-JES-MRM

_____

_____

21-10668                    Opinion of the Court                    3

No. 22-11590

_____

ABSOLUTE ACTIVIST VALUE MASTER FUND LIMITED,
ABSOLUTE EAST WEST FUND LIMITED,
ABSOLUTE EAST WEST MASTER FUND LIMITED,
ABSOLUTE EUROPEAN CATALYST FUND LIMITED,
ABSOLUTE GERMANY FUND LIMITED, et al.,

Plaintiffs-Appellees,

SUSAN ELAINE DEVINE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:15-cv-00328-JES-MRM

_____

_____

No. 22-13207

_____

4                    Opinion of the Court                    21-10668

IN RE:

REQUEST OF SUSAN DEVINE FOR JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. 1782 FOR THE LIECHTENSTEIN
PRINCELY COURT,

                                                        Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:22-mc-00008-JES-NPM

_____

Before BRANCH and LUCK, Circuit Judges, and SMITH,[*] District
Judge.

PER CURIAM:

## I.    Background

This case is a consolidation of four appeals[1] filed by Appel-
lant, Susan Devine, in two separate actions. Appellees are nine

---

[*] Honorable Rodney Smith, United States District Judge for the Southern Dis-
trict of Florida, sitting by designation.

[1] We previously consolidated separately filed appeals identified as case num-
bers 22-11313 and 22-11590 into case number 22-11313. The Circuit heard oral

former hedge funds ("Funds") incorporated in the Cayman Islands. The first action was brought by the Funds in the United States District Court for the Middle District of Florida ("the district court"). The second was brought by Devine in the United States District Court for the Southern District of New York.

*The RICO Litigation*

In the first action, the Funds brought claims for state and federal RICO violations, fraud, and unjust enrichment against Devine ("RICO litigation" or "RICO action"). The Funds alleged that in 2002, Florian Homm, Devine's ex-husband, founded Absolute Capital Management ("ACM") in the Cayman Islands. Homm served as ACM's Chief Investment Officer until he resigned in 2007. Unbeknownst to ACM's clients, Homm had been running a Penny Stock Scheme ("Scheme") via which he defrauded multiple clients of millions of dollars in investment losses. Homm received at least 100 million dollars for his role at ACM.

In 2006, Devine filed for divorce from Homm. The following year she received proceeds from the Scheme in her divorce settlement. Devine used the proceeds to purchase real property and gold and to open multiple bank accounts in countries throughout the world. The Funds alleged that Devine's divorce was strategic, a mere pretext for her to gain control of the Scheme's proceeds. The Funds stated that they suffered $197 million in investment

arguments on case numbers 21-13587; 22-11313 (consolidated); and 22-13207 on August 17, 2023.

losses because of the Scheme and sought to claw back the financial assets Devine was awarded in her divorce settlement.

The district court granted the parties' motion for an agreed protective order, which set parameters for discovery in the RICO action. The protective order allowed the parties to designate as "confidential" certain documents exchanged in discovery and prohibited each party from disclosing the other's confidential documents except in certain delineated circumstances. One such exception was that a party could disclose the other's confidential information if a state, federal or international criminal authority requested the information or if that party received a court order or subpoena based on legal process from another court. The protective order also provided that the parties must return and/or destroy confidential information obtained through discovery within sixty (60) days of the end of the action and any appeals therefrom.

Devine produced multiple documents, including sensitive financial information, during discovery. The protective order permitted the Funds to share Devine's confidential documents with Swiss authorities who were investigating Homm. The Funds also produced confidential documents to Devine. Some of the confidential documents produced by the Funds were essential to Devine's ability to defend herself against pending litigation before the Liechtenstein Princely Court ("Liechtenstein court"). However, Devine was barred by the district court from disclosing the Funds' confidential documents to these third parties.

Despite obtaining deposition testimony and confidential information from Devine during the action, the Funds did not comply with Devine's requests to take Rule 30(b)(6) depositions of their corporate representatives. On February 14, 2018, one week after the district court ordered the Funds to submit to what would have been the first deposition of their corporate representative in the RICO action, the Funds, who had shared with the Swiss authorities the confidential information they obtained under the protective order from Devine, voluntarily dismissed their suit.

On February 21, 2018, the district court issued an order dismissing the RICO action without prejudice. On July 11, 2018, the district court entered partial final judgment in Devine's favor and against the Funds. Post-dismissal, Devine moved the district court to modify the protective order to permit her to retain and disclose confidential materials produced by the Funds. The district court denied Devine's motion to modify the protective order. Devine appealed that order. The district court also issued another order directing Devine to hand over her copies of the Funds' confidential materials to the clerk of court, who was to maintain those documents under seal pending further order of the district court.

In May 2021, this Court held that, once the Funds had voluntarily dismissed their case, the district court lacked jurisdiction to rule on Devine's motion for modification of the protective order. *Absolute Activist Value Master Fund Ltd. v. Devine* ("*Devine I*"), 998 F.3d 1258, 1263 (11th Cir. 2021).

In September 2021, the district court, in reliance on *Devine I*, vacated its order on the motion for modification and in a separate order (the "transfer order") directed the clerk of court to "return defendant's copy of confidential documents deposited with the Court . . . to counsel for Plaintiffs for destruction or return." The district court eventually stayed the transfer order, but not before the confidential documents in question had been mailed to and received by the Funds' New York-based attorneys, Spears and Imes LLP ("Spears"). The transfer order is the subject of appeal number 21-13587.

Appeal numbers 22-11313 and 22-13207 arise from Devine's desire to obtain the same confidential documents for use in an action brought against her by the criminal authority in Liechtenstein. In February 2022, Judge Nigg of the Liechtenstein court issued a document request, addressed to the district court and to Devine's counsel, seeking production of certain materials that were produced in connection with the RICO litigation and designated confidential by the Funds pursuant to the protective order. Because Devine already had—pursuant to a prior order issued by the district court—deposited her copies of the requested materials with the clerk of court (which subsequently sent those documents to the Funds' New York-based counsel), she could not provide those documents to the Liechtenstein court in response to its request. Devine filed a motion to enforce the protective order, invoking the same provision of the protective order under which the Funds had produced to the Swiss authorities confidential documents Devine had produced to the Funds in discovery. The district court denied

Devine's motion to enforce the protective order and Devine appealed under case number 22-11313.

Devine then moved to extend the stay of the district court's transfer order. The district court denied the motion and Devine appealed under case number 22-11590. While the appeal under case number 22-11590 was pending, Devine filed a motion in this Court in case number 21-13587, seeking a stay of the district court's transfer order pending the outcome of her appeal. On May 13, 2022, we denied Devine's motion to stay.

*The mutual legal assistance treaty litigation*

One day before the stay of the transfer order was set to expire, Devine sought to obtain the same confidential documents for production to the Liechtenstein court by way of the mutual legal assistance treaty enshrined in 28 U.S.C. § 1782. Because the confidential documents deposited with the clerk of court were eventually released to Spears, Devine filed an action in the District Court for the Southern District of New York ("S.D.N.Y.") invoking § 1782. She sought a subpoena to compel Spears to return the confidential documents to her for use in the action before the Liechtenstein court. Devine filed the action in New York on grounds that it was the only district in which Spears was subject to personal jurisdiction.

The Funds intervened in the action and moved to transfer the action to the district court where its RICO action against Devine was pending Devine's appeal of the transfer order. The S.D.N.Y. ordered Spears to "preserve the documents at issue

pending the outcome of these proceedings." Without ruling on Devine's motion for the issuance of a subpoena to Spears, the S.D.N.Y. transferred Devine's action to the district court. Devine filed a motion for reconsideration in the S.D.N.Y. arguing that the S.D.N.Y. erred when it transferred her action because the S.D.N.Y. was the only court which could exercise jurisdiction over Spears. The S.D.N.Y. denied Devine's motion for reconsideration.

Devine moved the district court to transfer her § 1782 action back to the S.D.N.Y. for lack of jurisdiction. The district court denied the motion. The district court further determined that the protective order did not allow production of documents without a subpoena or court order. The district court also determined that the Liechtenstein court had not petitioned the district court to obtain the documents. Devine appealed the district court's denial of the motion to transfer the § 1782 action back to the S.D.N.Y., under case number 22-13207.

Several weeks later, Devine moved for contempt sanctions against Spears in the district court for violating the S.D.N.Y.'s order to preserve the confidential documents pending resolution of Devine's § 1782 petition. This was based on Spears's admission that, during the period of its office's relocation, a hard drive with the confidential files was misplaced. As of oral arguments in this case, the district court had not yet ruled on Devine's motion for contempt sanctions. That motion for sanctions is not before us.

After careful review and with the benefit of oral argument, we dismiss in part, and affirm in part. We do not have subject

matter jurisdiction over the district court's denial of the motion to enforce the protective order because the matter was already voluntarily dismissed by the Funds. Similarly, we do not have appellate jurisdiction to review the district court's order denying the motion to stay as it is neither a final order nor one entitled to interlocutory appeal. Neither do we have jurisdiction over the district court's transfer order because we cannot provide the relief Devine seeks. However, we have jurisdiction over the district court's denial of the order to issue a subpoena to Spears under § 1782 and to transfer the § 1782 action back to the S.D.N.Y. We affirm those orders for the reasons outlined below.

## II.    Issues on Appeal

Devine raises several issues on appeal, all centered on her efforts to gain access to the confidential documents produced in discovery in the RICO litigation. In her first appeal, case number 21-13587, Devine challenges the district court's order vacating its prior order denying Devine's motion for modification of the protective order. She also challenges the district court's jurisdiction to issue the transfer order which instructed the clerk of court to immediately return to the Funds, for destruction or return, the confidential documents which had been produced by the Funds during discovery to Devine and which Devine deposited with the clerk of court. Finally, Devine argues that the district court abused its discretion by directing the clerk of court to "return" the confidential documents to Spears "for destruction or return," notwithstanding that under the original protective order, such return or destruction was not required to occur until sixty (60) days after the conclusion

of the litigation (including any appeals). Devine argues that, at the time of the transfer order, her petition for a writ of certiorari was pending before the United States Supreme Court, such that return of the documents was not yet required.

In her second appeal, case number 22-11313, Devine argues that the district court abused its discretion when it determined that the request issued by the Liechtenstein court to the district court and to Devine was neither a subpoena nor court order and did not trigger production under the protective order. In her third appeal, case number 22-11590, Devine argues that the district court abused its discretion by declining to extend its stay of the transfer order which enabled the Funds to destroy the documents at issue.

In her fourth appeal, case number 22-13207, Devine argues that the district court erred in interpreting 28 U.S.C. § 1782 to confer upon itself jurisdiction to adjudicate Devine's § 1782 petition notwithstanding that Spears, the sole respondent, neither resides nor is found in the district in which the district court is located. Further, she argues that the district court erred in interpreting 28 U.S.C. § 1782 and 28 U.S.C. § 1631 to confer discretion upon itself to deny Devine's motion to transfer the § 1782 action back to the S.D.N.Y. Finally, she argues that the district court abused its discretion when it denied her petition for a subpoena directed to Spears for production of documents requested by the Liechtenstein court under 28 U.S.C. § 1782.

### III.    Discussion of the Issues

####    A.    Appeal of the Transfer Order

A threshold issue we are compelled to address is whether we have jurisdiction to hear Devine's first appeal. "The question of mootness is a threshold inquiry in every case." *Nyaga v. Ashcroft*, 323 F.3d 906, 913 (11th Cir. 2003). "[T]he Supreme Court has noted that, 'the question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction." *Id.* (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). In this Circuit, we have "concluded that a case must be dismissed as moot if the court can no longer provide 'meaningful relief.'" *Nyaga*, 323 F.3d at 913 (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000)).

Devine argues that the district court lacked subject matter jurisdiction to order that the documents be transferred from the clerk of court to Spears, that the order violated the mandate rule, and that the district court abused its discretion because it violated the protective order. Devine seeks, as relief from this Court, vacatur of the district court's transfer order directing that the clerk of court give the confidential documents Devine had received during discovery and deposited with the clerk to Spears. Because the hard drive containing the confidential documents was lost by Spears and cannot be found, vacatur of the order directing the clerk of court to transfer those documents will not result in the hard drive being returned either to the clerk of court or to Devine. This means that neither this Court, nor the district court, can give meaningful relief

to Devine. Accordingly, we must dismiss this appeal as moot. *Nyaga*, 323 F.3d at 913.

> B.        *Appeal of Denial of Motion to Enforce the Protective Order*

Turning to her second appeal, Devine argues that the district court abused its discretion when it: 1) denied her motion to enforce the protective order on grounds that the Liechtenstein request did not fall within the protective order's exception to disclose confidential information and 2) rejected her argument that the Funds' attorneys were holding her copy of the confidential documents as her trustee or bailee. We hold that we lack subject matter jurisdiction over this appeal for the same reason we did in *Devine I*.

Federal courts only have the jurisdiction authorized by statute or the United States Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a plaintiff unilaterally, or voluntarily, dismisses an action, it is no longer pending and "the district court is immediately deprived of jurisdiction over the merits of the case." *Devine I*, 998 F.3d at 1265. The court retains jurisdiction, however, "to consider a limited set of issues after the action is voluntarily dismissed." *Id.* We explained in *Devine I* that this limited set includes "at least five different types of collateral issues: costs, fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards." *Id.* at 1266. These exceptions are carved out to give courts "the power to enforce compliance with the rules and standards that keep the judiciary running smoothly." *Id.* (quoting *Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020)). In making our ruling in *Devine I*, we pointed out that Devine's motion

to modify the protective order was not included in that limited set. *Id.*

The same analysis is applicable to Devine's instant appeal of the district court's denial of her motion to enforce the protective order. Still, Devine claims that the district court retained jurisdiction to adjudicate her motion to enforce the protective order. Devine's reliance on our ruling in *Devine I*, however, is misplaced. In *Devine I*, we addressed the path to securing compliance with the district court's orders through "costs, fees, and sanctions," not a motion to enforce a previously issued order. *Devine I*, 998 F.3d at 1266.

When a party fails to comply with a court order, the way to "enforce compliance" is through contempt. *Id.* (quoting *Hyde*, 962 F.3d at 1309). "[D]istrict courts have the inherent power to impose sanctions for failure to comply with their orders" such that "[w]illful violation of a court order also raises the possibility of contempt sanctions." *Id.* at 1268. "[B]oth species of sanctions can be considered when a district court lacks jurisdiction over the underlying case," so "litigants will not be free to run off and violate protective orders without facing the threat of sanctions." *Id.* Consequently, in *Devine I*, we provided a road map on how to impose sanctions for non-compliance with a previously issued court order. Devine's motion to enforce the protective order does not seek sanctions for failure to comply with the protective order or for contempt. It merely seeks to compel the Funds to act under the protective order. This does not fall within the limited issues for which the district court

retains jurisdiction after dismissal. Thus, the order on the motion to enforce is not appealable and we have no jurisdiction.

Devine misapprehends our holding in *Devine I* to mean that the district court retains jurisdiction to decide motions to enforce previously issued orders, such as the protective order. What we said was that because a stipulated protective order is treated like a contract, a party seeking to enforce its terms post a Rule 41(a)(1)(A)(i) dismissal in federal court can do so by filing a breach of contract claim in state court or, if diversity jurisdiction exists, in federal court. *Id.* at 1268–69 & n.9. Devine did not file a breach of contract claim to enforce the provisions of the protective order after the Funds' filed their Rule 41(a)(1)(A)(i) dismissal.

Devine also relies on *Kokkonen* for the proposition that the district court has jurisdiction over her motion to enforce the protective order. *Kokkonen* is inapposite because it is based on ancillary jurisdiction arising from the parties' Rule 41 stipulation and dismissal as part of a negotiated settlement agreement. In *Kokkonen*, the Supreme Court considered whether a district court could enforce a settlement agreement the parties had negotiated, a term of which was dismissal of the action under Rule 41(a)(1)(A). 511 U.S. at 378. The district court executed the parties' stipulation and ordered dismissal with prejudice. *Id.* at 376–77. The order did not reserve jurisdiction in the district court to enforce the settlement. *Id.* at 377. The district court used its inherent power to grant one party's motion to enforce the settlement and the Ninth Circuit affirmed. *Id.*

The Supreme Court reversed, holding that neither Rule 41 nor "any [other] provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces" a rule 41 stipulation. *Id.* at 378. The Supreme Court observed that "[e]nforcement of [a] settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378. The Supreme Court further rejected ancillary jurisdiction as a possible basis. *Id.* at 378–81. Although the Supreme Court had previously "asserted ancillary jurisdiction . . . to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees," the Court concluded that enforcing a settlement agreement didn't fit within those categories because the district court only ordered that the action be dismissed—"a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Id.* at 379–80. Ancillary jurisdiction did not apply in *Kokkonen* because the facts underlying the breach of contract claim were separate from the facts of the main suit. Parties can provide for the court's jurisdiction to enforce a settlement agreement when dismissing a case. When a case is dismissed under Federal Rule of Civil Procedure 41(a)(2), the court can make the parties' compliance with the settlement agreement part of its order. *Id.* at 378-81.

Outside of the collateral jurisdiction discussed in *Devine I*, there is no jurisdictional basis for Devine's motion to enforce the protective order. *Devine I* applies to one-sided voluntary dismissals, as happened here. *Kokkonen*, on the other hand, applies if there is a

settlement based on a stipulated dismissal or a court ordered dismissal under Rule 42. Just like in the cases with the one-sided voluntary dismissal, there has been no decree to effectuate collateral jurisdiction. And even if there were, as both *Kokkonen* and *Devine I* note, the way to effectuate it would be to include the condition as part of the settlement, the Rule 42 order of the court, or to retain jurisdiction. None of that happened here.

### C.    *Appeal of Order Denying the Stay*

Devine argues that the district court abused its discretion when it denied her motion to extend the stay of the transfer order because she is likely to prevail on the merits of her appeals of the transfer order and the order denying enforcement of the protective order. She claims that lifting the stay would permit the Funds to destroy the confidential documents, which are the subject of multiple pending appeals, and that she would suffer irreparable harm. Namely, she would be deprived of responding to the Liechtenstein court's request and would not be able defend the litigation in Liechtenstein. Devine also argues that extending the stay would not prejudice the Funds, because her copies of the confidential documents would have remained in the clerk of court's custody and thus preserved the status quo.

The Funds counter that we lack jurisdiction to consider Devine's appeal because the district court's order denying the stay was neither final nor an appealable interlocutory order. We agree, although we do not reach the merits of the parties' arguments. Given our ruling on Devine's appeal of the transfer order above,

which affirms both the underlying transfer order and the order denying enforcement of the protective order, the issues are moot. *See supra* IV.A–B. Accordingly, we hold that we lack jurisdiction over the appeal of the district court's order denying a stay pending appeal.

### D.    *Appeal of the Order Denying Request for Assistance under § 1782*

Devine bases her appeal of the district court's order denying her petition under 28 U.S.C. § 1782 and denying her motion to transfer her petition back to the S.D.N.Y. on three grounds. First, Devine argues that the district court lacked jurisdiction because Spears, the subject of the petition, neither resided nor could be found in the Middle District of Florida. Second, she argues that the district court failed to transfer the petition back to the S.D.N.Y. under 28 U.S.C. § 1631, which requires transfer when there is a lack of jurisdiction. Third, Devine asserts that, even if the district court had jurisdiction, the district court abused its discretion when, through a restrictive reading of the protective order, it found that the Liechtenstein court's letter did not petition the district court for the confidential documents and treated its own order refusing to enforce the protective order as conclusive.

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In evaluating § 1782 petitions, district courts apply "two sets of factors—one

statutory and one discretionary." *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1221 (11th Cir. 2019) (citation omitted). The statute provides that:

> [t]he district court of the district in which a person resides or is found **may** order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person.

28 U.S.C. § 1782(a) (emphasis added). "When these statutory requirements are satisfied, a district court is authorized—but not required—to provide judicial assistance to the applicant." *Diageo PLC*, 925 F.3d at 1221 (citation omitted); *accord Application of Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2021) ("The law is clear that 'a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.'" (quoting *Intel*, 542 U.S. at 264)). In other words, "compliance with a . . . request is not mandatory." *Diageo PLC*, 925 F.3d at 1221 (quoting *In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007)).

The Supreme Court has articulated the following "guideposts which help a district court"—"upon concluding that the statutory [section] 1782 factors are met"—"decide how to best exercise its discretion:"

> [(1)] whether the person from whom discovery is sought is a participant in the foreign proceeding, because the need for . . . aid generally is not as apparent as it ordinarily is when evidence is sought from a non-participant; [(2)] the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance; [(3)] whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and [(4)] whether the request is otherwise unduly intrusive or burdensome.

*Diageo PLC*, 925 F.3d at 1221, 1223 (quoting *Clerici*, 481 F.3d at 1334) (quoting *Intel*, 542 U.S. at 264–65)).

> A district court's decision to honor or deny a section 1782 discovery request is reviewed for abuse of discretion. *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001). This deferential standard is identical to the one we use when reviewing a district court's ordinary discovery rulings, including rulings such as whether the foundation for a claim of privilege has been established. *Id*. To the extent the district court's decision is based on an interpretation of law, however, our review is de novo. *Id*. at 1319 n.8. Thus, we review de novo the district court's interpretation of a federal statute like section 1782. *Clerici*, 481 F.3d at 1331.

*JAS Forwarding (USA), Inc*., 747 F.3d at 1268.

Devine's first argument focuses on the statutory requirement that the person from whom discovery is requested either resides or is found in the Middle District of Florida. We therefore review de novo the district court's exercise of jurisdiction over Spears. Devine argues that the district court lacked jurisdiction to adjudicate the petition because Spears neither resides nor is found in the Middle District of Florida. Devine argues that Spears, the law firm, is physically present in New York and thus the petition should have been re-transferred to the S.D.N.Y. We disagree.

Because we have not previously addressed what it means for a person to reside or be found in a district for § 1782 purposes, we look to other circuits to evaluate their treatment of this issue. In *In re del Valle Ruiz*, the Second Circuit held that the "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." 939 F.3d 520, 528 (2d Cir. 2019); *accord In re Edelman*, 295 F.3d 171, 179–80 (2d Cir. 2002) (holding that "tag jurisdiction" à la *Burnham v. Superior Court of California*, 495 U.S. 604 (1990) (plurality opinion), sufficed for being "found" in a district for § 1782 purposes and that "the question of what it means to be found in a particular locale is already the subject of well-settled case law on territorial jurisdiction."); *but see In re Eli Lilly & Co.*, 37 F.4th 160, 164–67 (4th Cir. 2022) (stating that "found" was narrower than the "modern approach" of *International Shoe* to personal jurisdiction).

As it relates to her petition, Devine claims that Spears lacked sufficient contacts with the Middle District of Florida because the

confidential documents at issue were records of depositions taken in New York and the Cayman Islands. We previously have held that Michigan attorneys who had provided years of estate-planning counsel to a Florida resident had sufficient contacts "purposefully directed" at the Southern District of Florida such that the exercise of personal jurisdiction over them in Florida "comport[ed] with fair play and substantial justice." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255–60 (11th Cir. 1996). In *Robinson*, we held that, rather than mere "ministerial tasks," the attorneys had been hired to perform legal analysis, design a will and trust, and advise the client about "disposition of assets." *Id.* at 259. The attorneys performed knowing both that their client resided in Florida and that the will and trust would be probated and administered there. *Id.*

Here, we have similar facts to those in *Robinson*, which we determined comported with due process: out-of-state attorneys who provided years of substantive legal services—including the taking of the depositions and producing the confidential documents at issue—as part of the RICO litigation in the Middle District of Florida. Because personal jurisdiction over Spears in the Middle District of Florida comports with due process, we similarly hold that Spears was "found" in the district for § 1782 purposes. In turn, because Spears was "found" in the Middle District of Florida, Devine is not entitled to have her petition transferred back to S.D.N.Y.

Additionally, in *del Valle Ruiz*, the Second Circuit found that contacts under § 1782 are sufficient when the forum contacts are

"the primary or proximate reason that the evidence sought is available at all." 939 F.3d at 530. Here, the confidential documents Devine seeks would not be available had Spears and the Funds not had contacts with the Middle District of Florida pursuant to the RICO litigation.

We turn now to the question of whether the district court abused its discretion by denying Devine's petition for reasons unrelated to where Spears was "found." We review the district court's order under an "extremely limited and highly deferential" abuse-of-discretion standard. *United Kingdom*, 238 F.3d at 1319. "This deferential standard is identical to that used in reviewing the district court's ordinary discovery rulings." *Id*.

Despite determining that it was correct to exercise jurisdiction over Spears, the district court erroneously found that other requirements were not met. In denying Devine's petition, the district court erroneously found: 1) that "[t]he foreign government which allegedly desires the documents has not petitioned the court in this case or any other case to obtain the documents" and 2) that permitting disclosure "would contravene the [p]rotective [o]rder," which "does not allow production of the documents to Ms. Devine or the disclosure to a third party without a subpoena or court order." In Re: Request of Susan Devine for Judicial Assistance Pursuant to 28 U.S.C. § 1782 for the Liechtenstein Princely Court, Case No. 2:22-mc-8-JES-NPM, ("Opinion on Petition"), DE 42 at 6-7.

As to the first, Devine filed a translated copy of the Liechtenstein court's letter in both the RICO litigation and the § 1782

petition action. *Id.* at DEs 4-1; 4-2. The letter was addressed to Devine's counsel and to the district court itself. *Id.* It was therefore clearly erroneous for the district court to find that "[t]he foreign government which allegedly desires the documents" hadn't petitioned the court "to obtain the[m]." *See id.* at DE 42 at 7.

As to the second, as discussed above, during the RICO litigation, the protective order permitted Devine to disclose the Funds' confidential documents "pursuant to a request for information from any international, federal[,] or state criminal authority." Thus, it was also clearly erroneous for the district court to conclude that granting Devine's motion would "contravene the [p]rotective [o]rder." Even if the protective order did not provide for Devine to unilaterally disclose the materials, with notice to the Funds, § 1782 is a separate procedural vehicle for discovery and, as such, the protective order would not control Devine's petition.

No doubt, the district court had the discretion to decide that the protective order's restrictions were a discretionary reason to deny her § 1782 petition, but instead the district court appeared to treat the protective order as controlling—which constituted a clear error of judgment. *See United States v. B. G. G.*, 53 F.4th 1353, 1360 (11th Cir. 2022) ("The [abuse-of-discretion] standard gives the district court 'a range of choice,' provided that the choice does not constitute a 'clear error of judgment.'") (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010)). This, however, did not conclude the district court's evaluation of Devine's petition.

The district court also based its decision on multiple reasons predicated on its evaluation of the third and fourth *Intel* factors: (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States and (4) whether the request is otherwise unduly intrusive or burdensome. The district court stated that Devine's motion was "clearly an attempted end-run around [its] prior rulings and pending appeals." Given the years of litigation Devine waged to obtain the confidential documents at issue, even after the Funds' voluntary dismissal of the RICO litigation in 2018, it was not unreasonable for the district court to think Devine was trying to avoid litigating her § 1782 petition in a forum that had issued a series of unfavorable rulings against her. [2]

Based on the district court's treatment of these discretionary factors we affirm the denial of Devine's petition.

## IV.    Conclusion

Based on the foregoing we affirm the transfer order in the first appeal, dismiss the second appeal for lack of subject matter

---

[2] In denying Devine's motion, the district court also evaluated the third and fourth *Intel* factors related to a foreign country's policies on proof-gathering and whether a petition is "unduly intrusive or burdensome." *See Diageo PLC*, 925 F.3d at 1221 (quoting *Clerici*, 481 F.3d at 1334). The district court noted that the Funds "had to obtain approval from the Grand Court of Cayman Islands to produce" the confidential documents in the first place. Opinion on Petition at 5–6. Devine's counsel's declaration, that the Funds' documents would remain confidential if handed over to the Liechtenstein court, without more, did not provide "sufficient guarantee" to the district court. *Id.*

21-13587              Opinion of the Court              27

jurisdiction, dismiss the third appeal for lack of appellate jurisdiction, and affirm the district court's order denying the § 1782 petition under the fourth appeal.

**AFFIRMED AS TO APPEAL NO. 21-13587 AND 22-13207. APPEAL NO. 22-11313 AND 22-11590 ARE DISMISSED.**