[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2006
THOMAS K. KAHN
CLERK

No. 05-14048
Non-Argument Calendar

_____

D. C. Docket No. 05-20174-CV-MGC

VANESSA ACHOA LOPES,

Plaintiff-Appellee,

versus

AMILCAR AUGUSTO LOPES, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 12, 2006)**

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

This case began as a divorce proceeding in January of 2003 in the Second

Family and Succession Court in Sao Paolo, Brazil ("Brazilian Court") between Vanessa Achoa Lopes ("Wife") and Amilcar Augusto Lopes, Jr. ("Husband"). In January of 2004, at the request of Wife, Judge Airton Pinheiro de Castro ("Judge de Castro") of the Brazilian Court sent a letter to the Delta National Bank and Trust Company, located in Miami, Florida, asking for information relating to the existence of any financial assets held in the name of Husband. The letter stated that if such assets were found, 50% of such assets should be "blocked as soon as they are located" in order to aid the Brazilian Court during the dissolution proceedings.

In January of 2005, Wife filed an action in the District Court for the Southern District of Florida under 28 U.S.C. § 1782 and obtained an ex parte order by the District Court on the 21st of that month, appointing a Miami counsel for her who would issue subpoenas on her behalf. Through her local counsel in Miami, Wife then served subpoenas on Delta National Bank and Safra National Bank of New York, which also had a branch in Miami, Florida. The subpoenas sought "[a]ccount statements, or other documents from...any accounts in the name of [Husband], as well as any other accounts for which he had signature authority" covering a period of four months, from October, 2002 through January, 2003.

On March 18, 2005, Husband filed a motion for a protective order, a motion to quash the subpoenas issued by Wife's local counsel, and a motion to vacate the ex

parte order granting Wife local counsel because, Husband alleges, Wife was using the strategy to circumvent discovery restrictions under Brazilian law. Husband argued that Wife should be required to obtain the requested financial documents directly through Husband by way of the divorce proceeding in Brazil. On April 20, 2005, the District Court referred the case to Magistrate Stephen T. Brown. The parties filed motions before the Magistrate, with Husband arguing that Judge de Castro's written request of January, 2004 only mentioned Delta National Bank and not Safra National, and thus the subpoenas issued by Wife's local counsel were overly broad. Wife argued that she had sought relief under § 1782 in the United States because Husband's pleadings in the Brazilian Court had claimed "I [Husband] do not have and have never had a bank account in the United States." In response to Husband's claim that the subpoenas issued by Wife's local counsel in Miami were overly broad, Wife argued that Judge de Castro was interested in Husband's bank accounts in Miami in general, and did not specifically limit discovery to the Delta National Bank.

On June 16, 2005, the Magistrate granted Husband's Motion for Protective Order "to the extent that the discovery is limited to 'accounts in the name of Amilcar Augusto Lopes Junior.'" He then compelled discovery of documents from both Delta National and Safra National Banks for the period from October, 2002 through January, 2003. The Motion to Quash Subpoenas and Motion to Vacate the ex parte

3

order granting Wife local counsel were denied. Husband filed objections to the Magistrate's Order with the District Court on July 13, 2005. The next day, the District Court denied Husband's request for oral argument and adopted in its entirety the Magistrate's order. This appeal followed.

## I. STANDARD OF REVIEW

The parties, the Magistrate, and the District Court all agree that this issue is governed by 28 U.S.C. § 1782, which authorizes a district court, in its discretion, to obtain testimony or require the production of documents for use in a proceeding being conducted before a foreign tribunal.[1] As such, the relevant case law to

---

[1] The pertinent part of the statute reads:

(a) The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

4

consider is Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 124 S.Ct. 2466 (2004), which lays out factors for courts to consider when applying § 1782. Because the appeal is of the District Court's decision to adopt the Magistrate's order–which means the District Court exercised the discretion granted to it under § 1782–we review the District Court's order for abuse of discretion. We will review the District Court's interpretation of the Intel factors de novo.

## II. DISCUSSION

Husband claims that the Magistrate and District Court erred in applying the Intel factors, and granted Wife "unprecedented and unauthorized relief" under § 1782 by authorizing discovery from the Miami banks that "goes far beyond the scope" of the request from the Brazilian Court. Specifically, Husband claims that the District Court misapplied the first of the Intel factors and granted overly broad relief by ordering bank account documents from Delta National Bank and Safra National Bank, even though Judge de Castro's letter only requested "information" (and not, specifically, bank records) and failed to mention Safra National Bank.

Intel states that in exercising its discretion to consider a § 1782 request, a district court should consider the following factors:

> First, when the person from whom discovery is being sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid is generally not as apparent as it ordinarily is when evidence is sought from a nonparticipant in

5

the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.
. . . .

Second, as the 1964 Senate report suggests, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.

Intel, 541 U.S. at 264, 124 S.Ct. at 2483 (citations and quotations omitted).

Husband claims that the first Intel factor should be read against Wife because Husband is a "participant in the foreign proceeding." Id. The District Court found that this reading would render the introductory clause of the first factor–"the person from whom discovery is sought"–a nullity, and would therefore be incompatible with a proper reading of the statute as a whole. The District Court concluded that "the entities from whom the discovery is sought are the banks, not the husband."

We agree. The text of Intel supports this reading by noting that a foreign tribunal "has jurisdiction over those appearing before it, and can itself order them to produce evidence." Id. That phrase from Intel makes clear that the "person from whom discovery is sought" must therefore be a person or entity outside of the jurisdiction of the foreign tribunal, which the Miami banks in this case clearly are. More importantly, Husband is well within the jurisdiction of the foreign

6

tribunal, since his divorce proceeding is currently before the Brazilian Court. The only logical reading of Intel points to the bank (or banks) as the "person from whom discovery is sought," and the District Court's application of the Intel factors was correct.

We likewise reject Husband's contention that a combined reading of Judge de Castro's letter and § 1782 makes the relief granted by the District Court overly broad. Husband reads the letter from the Brazilian Court requesting "information" as incompatible with an order compelling the production of bank records; under this reading, an order compelling documentation is outside of the scope of a request for information. Essentially, Husband is arguing that bank records do not qualify as "information." We find this reading unpersuasive.

Finally, Husband contends that even if the District Court properly interpreted § 1782 and exercised its discretion in response to Judge de Castro's letter, it erred in granting Wife's request to compel documents from Safra National Bank, which was not explicitly included as one of the entities from whom information was requested in the letter from the Brazilian Court. As Wife points out in her brief, Judge de Castro's order pursuant to which the Delta National Bank letter was written stated that the Brazilian Court was seeking the "real truth" about the parties' assets in order to reach a fair result. The District Court's order

7

compelling records from Safra National Bank was consistent with this purpose.

Nor is there any indication from the text of § 1782 or <u>Intel</u> that the District Court is limited to compelling information from those parties specifically mentioned in the request letter issued by the foreign tribunal.  The statute says only that the "order may be made pursuant to a . . . request made, by a foreign or international tribunal or upon the application of any interested person."  Further, <u>Intel</u> notes legislative history that "leaves issuance of an appropriate order to the discretion of the court." <u>Intel</u>, 541 U.S. at 260, 124 S.Ct. at 2481.  We conclude that it was within the discretion of the District Court to include Safra National Bank in its order compelling information in this case pursuant to § 1782.

### III. CONCLUSION

The District Court properly interpreted § 1782 and the factors from <u>Intel</u> in issuing its order.  Finding no abuse of discretion we affirm.

**AFFIRMED**.