[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 15-13008 & 15-15066

_____

D.C. Docket No. 1:13-cv-3437-LMM

ANNA ALEKSANDROVNA SERGEEVA,
a natural Person and Citizen of the Russian Federation,

Plaintiff – Appellee,

versus

TRIPLETON INTERNATIONAL LIMITED,

Defendant,

TRIDENT CORPORATE SERVICES, INC.,

Interested Party - Appellant,

GABRIELA PUGH,

Interested Party.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(August 23, 2016)

Before JORDAN and ANDERSON Circuit Judges, and DALTON,[*] District Judge.

DALTON, District Judge:

In these consolidated appeals, Appellant challenges the U.S. District Court for the Northern District of Georgia's orders allowing discovery pursuant to Title 28, United States Code, § 1782 (Appeal No. 15-13008 ("First Appeal")) and imposing contempt sanctions (Appeal No. 15-15066 ("Second Appeal")). After a thorough review of the record and with the benefit of oral argument, we find no error and affirm the District Court in all respects.

## I.

After dissolving their sixteen-year marriage in the Russian Federation ("Russia"), former spouses Mikhail Leopoldovich Dubin ("Ex-Husband") and Appellee Anna Sergeeva ("Ex-Wife") commenced a distinct proceeding in the Hoamvnischesky District Court of Moscow ("Moscow Court") for division of marital assets ("Russian Dispute"). In the Russian Dispute, Ex-Wife claimed that Ex-Husband was concealing and dissipating marital assets through and with the assistance of "offshore companies" around the world.

Ex-Husband dodged, delayed, and opposed Ex-Wife's unrelenting efforts to obtain discovery in support of her claim, and their red in tooth and claw feud played out in countries around the world, including Cyprus, Latvia, Switzerland,

---

[*] Honorable Roy B. Dalton, Jr., United States District Judge for the Middle District of Florida, sitting by designation.

2

the British Virgin Islands ("BVI"), the Commonwealth of the Bahamas ("Bahamas"), and the United States of America. In the United States, Ex-Wife sought information from Gabriella Pugh ("Ms. Pugh") and her employer in Atlanta, Georgia—Appellant Trident Corporate Services, Inc. ("Trident Atlanta")—that she expected would reveal Ex-Husband's beneficial ownership of Bahamian corporation, Tripleton International Limited ("Tripleton"). When met with resistance, Ex-Wife initiated a § 1782 action in the Atlanta division of the District Court on July 25, 2013. Ex-Wife filed substantial evidence in support of her "Ex Parte Application for Judicial Assistance" ("Application"), including a lengthy and detailed declaration from her attorney, Dmitry Lovyrev ("Lovyrev"). On referral, the Magistrate Judge granted the ex parte Application and authorized service of two subpoenas ("Ex Parte MJ Order").

The subpoena issued to Trident Atlanta ("Subpoena"): (a) referenced Tripleton, and other Bahamian corporations, including Guardian Nominees (Bahamas) Limited ("Guardian Bahamas") and Trident Corporate Services (Bahamas) Limited ("Trident Bahamas"); (b) referenced other "Trident Trust" entities located in Cyprus and Switzerland; (c) demanded production of documents possessed by Trident Trust entities located outside the United States, including Trident Bahamas; and (d) instructed Trident Atlanta to furnish all responsive documents in its "possession, custody, or control, regardless of whether such

3

documents or materials are possessed directly by [Trident Atlanta] or by any of [Trident Atlanta's] agents, representatives, attorneys, or their employees or investigators."

Trident Atlanta objected to the Subpoena on numerous grounds, including that it sought documents located outside the United States and required "Trident Atlanta to obtain documents from a third party."[1] Trident Atlanta also filed motions to vacate the Ex Parte MJ Order and to quash the Subpoena, which motions were referred to the Magistrate Judge, who: (a) denied the motions; (b) granted Ex-Wife's motion to compel; and (c) required production of all documents responsive to the Subpoena that are within the "possession, custody, or control" of Trident Atlanta. ("MJ Production Order"). A few months later, the Magistrate Judge also denied Trident Atlanta's request for reconsideration of the MJ Production Order. ("MJ Reconsideration Order").

Ultimately, Trident Atlanta produced only twenty-three pages of documents from its office in Atlanta, and it objected to the MJ Production and the MJ Reconsideration Orders. On February 6, 2015, the District Court Judge overruled Trident Atlanta's objections and approved the orders entered by the Magistrate Judge. ("DJ Review Order"). Several months later, the District Court

---

[1] Ms. Pugh also resisted providing discovery, and she filed a sworn statement with the District Court. ("Pugh Affidavit"). Nonetheless, Ms. Pugh appeared for her deposition and provided information concerning Trident Atlanta and other Trident Trust entities. ("Pugh Depo").

declined to reconsider the DJ Review Order and noted that Trident Atlanta's obligation to respond to the Subpoena was clear:

> [Trident Atlanta] is required to respond to the [S]ubpoena as ordered by [the Magistrate Judge] on November 22, 2013. If it does not have the requested documents, it should say so via a discovery response with a clear statement as to what [Trident Atlanta] has done in order to obtain these documents. If [Trident Atlanta] cannot produce the documents after a good faith attempt to find documents, it should say so. Obviously, if [Trident Atlanta] does not tell the truth and does in fact have the practical ability to obtain the documents, this Court will order sanctions against [Trident Atlanta].

("DJ Reconsideration Order"). Trident Atlanta then filed the First Appeal and requested stays, which requests were denied by the District Court and by this Court.

While the First Appeal was pending, Ex-Wife sought sanctions against Trident Atlanta for its failure to produce documents responsive to the Subpoena. ("Sanctions Motion"). The District Court determined that it retained jurisdiction concerning the sanctions issue, accepted additional evidence and briefing, and conducted an evidentiary hearing on October 6, 2015. ("2015 Hearing"). The District Court granted the Sanctions Motion, held Trident Atlanta in contempt, awarded Ex-Wife her attorney's fees and costs ("Compensatory Sanction"), and ordered Trident Atlanta to produce responsive documents or pay a sanction ("Coercive Sanction") of $500 a day for up to sixty days of any continued non-compliance. ("Contempt Order").

5

In January 2016, the District Court rejected Trident Atlanta's request for relief from the Coercive Sanction and entered partial final judgment awarding $234,983.58 to Ex-Wife as the Compensatory Sanction. Trident Atlanta filed its Second Appeal, and—after consolidating the First and Second Appeals—we heard oral argument on March 9, 2016.

## II.

We apply an abuse of discretion standard in reviewing district court decisions resolving applications for assistance pursuant to § 1782. *See Lopes v. Lopes*, 180 F. App'x 874, 876–77 (11th Cir. 2006) (applying abuse of discretion standard in appeal of order that adopted a magistrate judge's order granting discovery pursuant to § 1782). We also apply an abuse of discretion standard in reviewing decisions to hold a party in civil contempt and to impose compensatory and coercive sanctions. *See F.T.C. v. Leshin*, 719 F.3d 1227, 1231–32, 1239 (11th Cir. 2013) (observing that district courts have "extremely broad and flexible powers" in the civil contempt area). "'A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'" *Id*. at 1230 (quoting *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010)).

6

### III.

"Section 1782 is the product of congressional efforts, over [a] span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In pertinent part, § 1782 currently provides:

> The district court of the district in which a person resides or is found *may order* him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, *in accordance with the Federal Rules of Civil Procedure*.

28 U.S.C. § 1782(a) (emphasis added). Examined in context, this statutory language "authorizes, but does not require," that district courts provide judicial assistance to § 1782 applicants. *See Intel Corp.*, 542 U.S. at 255, 264; *United Kingdom v. United States*, 238 F.3d 1312, 1318–19 (11th Cir. 2001) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 [is] committed to [the district court].").

We have recognized four prima facie requirements that must be established before a district court may exercise its authority under § 1782:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the

production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*Consorcio Ecuatoriano de Telecomunicaniones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (quoting *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007)). If these requirements are met,[2] then—upon consideration of four factors identified by the Supreme Court ("*Intel* Factors")—the district court has discretion whether and how to grant an applicant's § 1782 request. *See id*. at 1271.

The *Intel* Factors consider: (a) whether aid is sought to obtain discovery from a participant in the foreign proceeding ("First Factor"); (b) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" ("Second Factor"); (c) whether the applicant is attempting to use § 1782 to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" ("Third Factor"); and (d) whether the discovery requests are "unduly intrusive or burdensome" ("Fourth Factor").[3] *See Intel Corp.*, 542 U.S. 264–65; *In re Clerici*, 481 F.3d at 1334.

---

[2] Initially, Trident Atlanta conceded all but the third prima facie requirement—which the District Court found was satisfied. In these consolidated appeals, Trident Atlanta does not challenge this finding.

[3] Only the Third Factor is at issue in these consolidated appeals, and we reject Trident Atlanta's unpersuasive argument concerning this *Intel* Factor.

## A.

Erosion of marital bliss is blind to national identity and geographic boundaries,[4] but the marrow of Trident Atlanta's arguments is that § 1782 is *not blind* to such matters. Specifically, Trident Atlanta argues that § 1782 does not reach "documents *located in foreign countries*" because "American courts were not intended to serve as clearing houses for requests for information from courts and litigants all over the world." ("**Extraterritoriality Argument**"). Ex-Wife counters that the Extraterritoriality Argument fails under *Intel Corp.* and a plain reading of § 1782.

The Extraterritoriality Argument presents a question of first impression in this Circuit. With no controlling law on point and a dearth of instructive decisions from our sister Circuit Courts, the District Court rejected the Extraterritoriality Argument. This decision—to the extent it is based on the District Court's construction of § 1782 or the Federal Rules of Civil Procedure—is reviewed de

---

[4] Indeed, it is not uncommon for a § 1782 action to originate in the financial and legal fallout of anagapesis abroad. *See Glock v. Glock, Inc.*, 797 F.3d 1002, 1003 (11th Cir. 2015) (noting that ex-wife filed the § 1782 proceeding to obtain discovery for use in her Austrian divorce); *Lopes*, 180 F. App'x at 875 (noting that the § 1782 proceeding "began as a divorce proceeding" in Brazil); *Gushlak v. Gushlak*, 486 F. App'x 215, 216 (2d Cir. 2012) (affirming order granting § 1782 petition for discovery related to Cayman Islands divorce); *London v. Does 1-4*, 279 F. App'x 513, 514 (9th Cir. 2008) (affirming order granting § 1782 assistance for discovery related to St. Martin divorce); *In re Roebers*, No. C12-80145 MISC, 2012 WL 2862122, at *1 (N.D. Cal. July 11, 2012) (granting renewed § 1782 application for subpoenas related to Irish divorce); *Kwon Mei Lan Mirana v. Battery Tai-Shing Corp.*, No. C08-80142, 2009 WL 290459, at *1 (N.D. Cal. Feb. 5, 2009) (issuing subpoenas pursuant to §1782 for discovery concerning "actual and beneficial ownership" of assets at issue in ex-spousal support proceeding in Hong Kong).

novo. *See In re Clerici*, 481 F.3d at 1331; *see also JAS Forwarding*, 747 F.3d at 1268 (reviewing de novo issues of statutory interpretation); *Ecuador v. Hinchee*, 741 F.3d 1185, 1188 (11th Cir. 2013) (noting that we review de novo a district court's interpretation of the Federal Rules of Civil Procedure).

The District Court properly began its analysis with an examination of the statutory text. The District Court noted that § 1782 "plainly says that discovery is to be produced pursuant to the Federal Rules of Civil Procedure unless otherwise limited" by court order. Noting that the Federal Rules of Civil Procedure "authorize extraterritorial document productions," the District Court concluded that § 1782 authorized it to require that Trident Atlanta produce documents in its "possession, custody, and control," even if such documents are in the possession of one of the Bahamian Trident Trust companies.

Seeking reversal of this determination, Trident Atlanta urges us to consult "the legislative history and principal drafter" of § 1782 and apply a "presumption that [U.S.] law governs domestically but does not rule the world." We decline to adopt such a provincial view given that the statutory text authorizes production of documents "in accordance with the Federal Rules of Civil Procedure." *See* 28 U.S.C. § 1782(a); *see also Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009) (holding that district courts act well within their discretion under § 1782(a) when they "order discovery pursuant to the Federal Rules of Civil Procedure").

As Trident Atlanta concedes, discovery pursuant to the Federal Rules of Civil Procedure is broad and covers materials located outside of the United States. Further, we note that: (1) Federal Rule of Civil Procedure 45 requires that subpoenaed parties "produce designated documents, electronically stored information, or tangible things in [the parties'] possession, custody, or control" (Rule 45(a)(1)(A)(iii)); and (2) the only geographical limitation provided by Rule 45 concerns the location for the *act of production*—not the location of the documents or information to be produced (Rule 45(c)(2)(A)).[5] Thus, the District Court could require that Trident Atlanta produce responsive documents and information located outside the United States—so long as Trident Atlanta had possession, custody, or control of such responsive material ("**Control Requirement**").

At bottom, we agree with the District Court that the location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under § 1782. To hold otherwise would categorically restrict the discretion Congress afforded federal courts to allow discovery under § 1782 "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. §1782(a). This, we cannot

---

[5] The only other limitations under Rule 45 concerns protection of proprietary information (Rule 45(d)(3)(B)), protection of privileged information (Rule 45(d)(3)(A)(iii)), and avoidance of undue burden or cost (Rules 45(d) & 45(e)(1)(D)).

11

do. *See Stanard v. Olesen*, 74 S. Ct. 768, 771 (1954) ("[I]t is for Congress, not the courts, to write the law."); *see also Intel Corp.*, 542 U.S. at 255, 260–62 (rejecting purportedly implicit "foreign-discoverability rule" that would limit the discretion afforded district courts under § 1782); *Glock*, 797 F.3d at 1010 (declining to impose a restriction unsupported by the text of §1782).

### B.

Having rejected the Extraterritoriality Argument, we turn to Appellant's arguments concerning the Control Requirement—specifically, that the District Court: (a) applied the wrong legal standard; and (b) made factual findings in Ex-Wife's favor without sufficient record evidence. ("Control Arguments"). Employing an "extremely limited and highly deferential" standard of review, we reject these arguments. *See In re Clerici*, 481 F.3d at 1331.

First, the District Court applied the correct legal standard. Relying on *SeaRock v. Stripling*, 736 F.2d 650, 653–54 (11th Cir. 1984), which broadly construed "control" for purposes of discovery as "the legal right to obtain the documents requested upon demand," the District Court determined that "the legal right to obtain documents requested upon demand" may be established where affiliated corporate entities—who claim to be providers of complimentary and international financial services—have actually shared responsive information and documents in the normal course of their business dealings. *See id.* (addressing

12

whether the responding party "made a good faith effort to obtain" responsive documents); *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470–71 (S.D. Fla. 2011) (allowing discovery based on a "practical ability to obtain" responsive documents).[6]

Neither were the District Court's factual findings clearly erroneous. The record included a copy of correspondence authored by Ms. Pugh that seemingly conceded Ex-Husband's beneficial ownership of Tripleton in March 2012 ("Pugh Correspondence"), and Trident Atlanta admitted that Trident Bahamas actually provided Ms. Pugh with corporate information concerning Tripleton. Trident Atlanta also concedes that: (a) it and Trident Bahamas are members of a group— the "Trident Group"—which offers clients "international financial planning services" through "production" and "client liaison" companies around the world; (b) production companies in the Trident Group refer client requests to client liaison companies for communication purposes; (c) it is a client liaison company; and (d) Trident Bahamas is a production company.

Although Trident Atlanta denied having any "legal right" to documents or information from other members of the Trident Group, it is apparent that client liaison members could not possibly perform their intended functions for Trident

---

[6] We reject Trident Atlanta's argument that "legal right" under *Searock* means "legal control." *See Sciele Pharma, Inc. v. Brookstone Pharms., LLC*, No. 2011 WL 3844891, at *4 (N.D. Ga. Aug. 30, 2011) (noting that "control" is not necessarily negated by the fact that a third-party has actual possession of responsive documents).

Group clients absent the ability to obtain information and documents from production company members.[7] Thus, we agree with the District Court that significant "circumstantial evidence" established that Trident Atlanta had "control" over responsive documents in the physical possession or custody of Trident Bahamas. Accordingly, we **AFFIRM** the District Court in all respects as to the First Appeal.

## IV.

Reiterating its Extraterritoriality and Control Arguments, in the Second Appeal, Trident Atlanta contends that the Contempt Order was improperly founded on "*unlawful orders*." We reject these rehashed arguments because—as explained in Part III *supra*—the MJ Production Order and the DJ Review and Reconsideration Orders were lawful. Trident Atlanta also argues that the Contempt Order is unlawful because the First Appeal divested the District Court of jurisdiction to consider the Sanctions Motion. Absent entry of a stay on appeal— which Trident Atlanta failed to obtain here—the District Court retained jurisdiction to enforce its orders. *See Maness v. Meyers*, 419 U.S. 449, 458–60 (1975). Thus, we reject Trident Atlanta's frivolous jurisdictional argument.

---

[7] Upon request of the Moscow Court, another "client liaison" company in the Trident Group—Swiss-based Trident Corporate Services AG—was able to produce documents similar to those requested in the Subpoena.

14

Finally, Trident Atlanta argues that the Contempt Order is not supported by the evidence. We disagree. Trident Atlanta was afforded ample opportunity to show cause why it should not be held in contempt and sanctioned; indeed, the District Court conducted the 2015 Hearing and accepted additional evidence and extensive legal briefing on these issues. This fulsome record evinced clear and convincing violations of the District Court's many orders, which violations complemented discovery-avoidance efforts in other jurisdictions, exerted—sometimes by shared counsel—on behalf of Ex-Husband, Tripleton, Trident Bahamas, and other members of the Trident Group. Further, Trident Atlanta did not establish that these violations occurred despite "all reasonable efforts to comply" in good faith with the District Court's Orders. Given this record, and the District Court's extensive experience with Trident Atlanta, its affiliated entities, and some of their shared attorneys, we will not disturb the District Court's finding of bad faith. Rather, we **AFFIRM** the District Court in all respects as to the Second Appeal.[8]

**AFFIRMED.**

---

[8] In reaching this decision, we have considered the Supreme Court of the United States recent opinion in *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016)—the subject of a Motion for Supplemental Briefing which Appellant filed in both cases. As the *Nabisco* opinion does not change our analysis, the Motions for Supplemental Briefing are **DENIED**.