[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11896

_____

CHRISTIAN BINDSLEV,

Plaintiff-Appellee,

*versus*

MELISSA CAROLINA SILVA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cv-21088-JEM

_____

2                    Opinion of the Court                    24-11896

_____

No. 24-12592

_____

CHRISTIAN BINDSLEV,

Plaintiff-Appellee,

*versus*

MELISSA CAROLINA SILVA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cv-21088-JEM

_____

Before NEWSOM, LUCK, and ABUDU, Circuit Judges.

PER CURIAM:

Melissa Silva appeals two orders, both issued by the district court pursuant to the Hague Convention on the Civil Aspects of International Child Abduction. In what we will call the "Return Order," the district court found that Silva had wrongfully removed her child, I.S.B., to the United States and required her to return

I.S.B. to Denmark. And in what we will call the "Enforcement Order," which was issued after the Return Order was pending before us on appeal, the district court required Silva to turn I.S.B. over to her father, Christian Bindslev, in Florida. The facts of the case are known to the parties, and we repeat them here only as necessary to decide the case. After carefully considering the record, and with the benefit of oral argument, we **AFFIRM** the Return Order and **VACATE** the Enforcement Order.

## I

When considering a district court's order under the Hague Convention, "[w]e review a district court's findings of fact for clear error and its legal conclusions and applications of the law to the facts de novo." *Gomez v. Fuenmayor*, 812 F.3d 1005, 1007 (11th Cir. 2016).

We hold that the district court did not err in ordering I.S.B.'s return to Denmark. The Hague Convention, as implemented in the United States through the International Child Abduction Remedies Act, "establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained." 22 U.S.C. § 9001(a)(4). When one parent removes a child from another country to the United States, a U.S. court can order the child's return to his or her "country of habitual residence" if the non-removing parent proves "by a preponderance of the evidence, that [the] child was 'wrongfully removed or retained within the meaning of the Convention.'" *Chafin v. Chafin*, 742 F.3d 934, 935, 938 (11th Cir. 2013) (quoting 42 U.S.C. § 11603(e)(1)(A)).

But that prima facie case for return can be rebutted through any of several affirmative defenses enumerated in the Convention. These defenses are "narrowly construed" and "do not automatically preclude an order of return." *Baran v. Beaty*, 526 F.3d 1340, 1345 (11th Cir. 2008). One such defense applies when the party "which opposes [the child's] return establishes that . . . there is a grave risk that . . . return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention on the Civil Aspects of International Child Abduction, art. 13, Oct. 25, 1980. If a court finds a grave risk of harm, it has three options: It can order the child's return anyway, refuse to order the child's return, or impose "ameliorative measures that could ensure the child's safe return." *Golan v. Saada*, 596 U.S. 666, 678 (2022).

In the Return Order, the district court found that Bindslev had made out a prima facie case for return. Silva does not challenge this finding. Rather, she asserts that the court further found that return would expose I.S.B. to a "grave risk of harm" and that the "ameliorative measures" that the court imposed were ineffective. In the alternative, she argues that the district court was required, but failed, to make a finding on the grave-risk-of-harm issue.

We disagree. As we read the Return Order, the district court found that Silva had *not* established a grave risk of harm. In relevant part, the Order states as follows: "Although [Silva] argued that returning the child would expose the child to physical or psychological harm or otherwise place the child in an intolerable

situation, this Court finds that the court in Denmark is fully capable of protecting the child if necessary." To be sure, the district court could have expressed itself more clearly, but by beginning its statement with the word "[a]lthough," it sufficiently indicated its consideration, and rejection, of Silva's grave-risk argument. The court's reference to the Denmark court's capacity to protect I.S.B. does not suggest otherwise. Although Silva contends that the remark refers to an ameliorative measure, and therefore suggests that the court found that she had established the requisite grave risk, the capacity of Denmark's tribunals to protect I.S.B. is not a court-imposed ameliorative measure, but rather an independently existing fact.

Accordingly, we affirm the district court's Return Order.[1]

**II**

"We review de novo questions on the jurisdiction of the district court." *Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir. 2007). We hold that the district court lacked jurisdiction to issue the Enforcement Order while the Return Order was pending before us on appeal.

"Absent entry of a stay on appeal . . . the District Court retain[s] jurisdiction to enforce its orders." *Sergeeva v. Tripleton Int'l*

---

[1] The Return Order does not violate Federal Rule of Civil Procedure 52(a)(1), as Silva contends. The Order incorporated "the reasons stated on the record," and those reasons are sufficiently detailed to clear Rule 52's low bar. *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1308–09 (11th Cir. 2020).

*Ltd.*, 834 F.3d 1194, 1201–02 (11th Cir. 2016). But "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Accordingly, the "'district court does not have the power to alter the status of the case as it rests before the Court of Appeals.'" *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) (quoting *Dayton Indep. Sch. Dist. v. U.S. Min. Products Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990)).

The Enforcement Order purported to alter the status of an issue involved in a pending appeal. The Return Order stated that "[I.S.B.] shall not be turned over to [Bindslev]." In stark contrast, the Enforcement Order stated that Silva will "surrender [I.S.B.] to the custody and possession" of Bindslev. That was not a valid "enforcement" of the Return Order. Rather, it was an attempted amendment of a portion of the Return Order that was inseparably involved in a pending appeal before this Court. The district court has no jurisdiction to do so.

Accordingly, we vacate the district court's Enforcement Order.

★  ★  ★

For these reasons, the Return Order is **AFFIRMED,** and the Enforcement Order is **VACATED**.

24-11896          Abudu, J., Dissenting in Part          1

ABUDU, Circuit Judge, concurring in part and dissenting in part:

I join in the Majority's opinion vacating the district court's Enforcement Order. The Majority opinion also should have vacated the district court's Return Order for failing to make specific factual findings regarding the mother's (Melissa Silva) allegations regarding domestic violence and other abusive behaviors against the father (Christian Bindslev), and because of the lower court's failure to "state its conclusions of law separately" as to whether Silva satisfied her burden for presenting a "grave risk" defense to Bindslev's ICARA petition. Fed. R. Civ. P. 52(a)(1).

Neither the transcript from the hearing nor the district court's written order contains factual findings or legal conclusions regarding Silva's "grave risk" argument even though that was the central theory of her defense. Instead, the district court merely acknowledged the defense was raised and then included very specific instructions in the Return Order that required: (1) Silva, a U.S. citizen, to accompany the child (I.S.B.) to Denmark and stay with I.S.B. for an unspecified period of time; (2) prohibited Bindslev from assuming physical custody of I.S.B. upon Silva's arrival in Denmark; and (3) ordered Bindslev to secure separate housing for I.S.B. and Silva as well as pay all their living expenses. Although these requirements look like "ameliorative measures" that would safeguard I.S.B. from any harm Bindslev poses, we simply do not know what the district court intended these measures to address. Consequently, the order does not allow this Court to meaningfully review whether the district court made clearly erroneous factual

findings, reached an erroneous legal conclusion on the issue of grave harm, or imposed these measures for other reasons. *Gomez v. Fuenmayor*, 812 F.3d 1005, 1007 (11th Cir. 2016) (applicable standards of review); *Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007) ("[T]his Court has admonished district courts that their orders should contain sufficient explanations of their rulings so as to provide this Court with an opportunity to engage in meaningful appellate review."). This lack of clarity does not even meet the "low bar" that Rule 52 sets. Therefore, I respectfully dissent in part.

## I.    FACTUAL BACKGROUND

In March 2024, Bindslev petitioned for I.S.B.'s return, alleging that Silva wrongfully removed I.S.B. from Denmark and brought her to the United States in violation of ICARA. Silva challenged the petition on the ground that returning I.S.B. to Denmark would expose I.S.B. to a grave risk of harm or place I.S.B. in an intolerable situation. Specifically, Silva claimed that I.S.B. would face a grave risk of harm because Bindslev has a history of violent behavior and physically assaulted her several times, including in I.S.B.'s presence. Silva further claimed that I.S.B. would be personally exposed to danger because the father sold and abused illicit drugs and abused alcohol. Finally, Silva claimed that separating her and I.S.B. would cause I.S.B psychological harm because she was the only caregiver I.S.B. had known.

During a three-day bench hearing, Silva proffered evidence to support her claims, including her own testimony and an "abuse log." The father proffered evidence to refute Silva's claims,

24-11896          Abudu, J., Dissenting in Part          3

including his own testimony, text messages, and expert testimony from a licensed psychologist.

From the bench, the district court granted Bindslev's petition and ordered that Silva return I.S.B. to Denmark. The next day, the district court memorialized its decision in a two-page order. Other than acknowledging that Silva raised a "grave risk" defense, the court did not make any factual findings as to whether she satisfied her burden of proof, did not provide any legal analysis as to the grave risk defense, and imposed onerous demands on both parties without a clear explanation as to why such conditions were necessary.

## II.     DISCUSSION

On appeal, Silva argues the district court violated Rule 52(a)(1) by failing to include any specific findings regarding whether Bindslev's alleged history of abuse was credible, whether I.S.B. would be unsafe in Denmark living alone with Bindslev, or whether Silva traveling with and staying with I.S.B. in Denmark was necessary for I.S.B.'s safety. Silva is correct on all fronts.

### A.     Rule 52(a)(1)

After a bench trial, "the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a). The court must find these facts "with enough specificity for a reviewing court to identify the factual findings upon which the court's legal conclusions are based."

4                 Abudu, J., Dissenting in Part              24-11896

*Stock Equip. Co. v. Tenn. Valley Auth.*, 906 F.2d 583, 592 (11th Cir. 1990). Further, the court should "state the reason for its decision and the underlying predicate." *Clay v. Equifax, Inc.*, 762 F.2d 952, 957–58 (11th Cir. 1985) (collecting cases from our predecessor Court, the former Fifth Circuit).

That said, "[t]he judge need only make brief, definite, pertinent findings and conclusions upon the contested matters." *Stock Equip. Co.*, 906 F.2d at 592 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1946 amendment). Further, "[a]lthough there must be sufficient record evidence to support the findings, [the court] need not state the evidence or any of the reasoning upon the evidence, nor assert the negative of rejected propositions." *Id.* (internal quotation marks and citations omitted). Notwithstanding the low bar for the sufficiency of a court's *explanation* of its decision, it must state what that decision *is*. *Id.*

### B.    ICARA and the "grave risk" exception

If a petitioner establishes by a preponderance of the evidence that a child has been wrongfully retained in violation of ICARA, the child must "be promptly returned unless one of the narrow exceptions set forth in the [Hague] Convention applies." 22 U.S.C. § 9001(a)(4); *see also Gomez*, 812 F.3d at 1011–12. Article 13(b) of the Hague Convention prohibits the removed child's return to the country of habitual residence where return would expose her to a grave risk of physical or psychological harm. *Baran v. Betty*, 526 F.3d 1340, 1345 (11th Cir. 2008) (citing Hague Convention on the

24-11896            Abudu, J., Dissenting in Part            5

Civil Aspects of International Child Abduction, art. 13(b), Oct. 25, 1980). "While the proper inquiry focuses on the risk faced by the child, not the parent, . . . sufficiently serious threats and violence directed against a parent can nonetheless pose a grave risk of harm to a child as well." *Gomez*, 812 F.3d at 1010. That said, sister circuits have recognized that the harm a child might experience from being taken away from one parent and removed to another parent does not always rise to a grave risk under ICARA. *See, e.g.*, *Whallon v. Lynn*, 230 F.3d 450, 459 (1st Cir. 2000); *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 377 (8th Cir. 1995); *Friedrich v. Friedrich*, 78 F.3d 1060, 1068-69 (6th Cir. 1996).

Even still, the parent opposing the return must show that the child faces a grave risk of harm by clear and convincing evidence. 22 U.S.C. § 9003(e)(2)(A). Accordingly, "[t]he Convention assigns the duty of the grave risk determination to the country to which the child has been removed." *Danaipour v. McLarey*, 286 F.3d 1, 18 (1st Cir. 2002). "It is not a derogation of the authority of the habitual residence country for the receiving U.S. courts to adjudicate the grave risk question. Rather, it is their obligation to do so under the Convention and its enabling legislation." *Id.* Thus, "where a party makes a substantial allegation that, if true, would justify application of the Article 13(b) exception, the court should make the necessary predicate findings." *Id.*

Here, although the district court acknowledged that Silva raised the grave risk exception, it did not make any findings of fact and did not provide a conclusion of law about whether Silva

6                 Abudu, J., Dissenting in Part            24-11896

established, by clear and convincing evidence, that I.S.B. faced a grave risk of harm recognized under ICARA. To begin, Silva raised three distinct risks of harm to I.S.B. upon her return to Denmark: (1) the father's abuse of Silva; (2) the direct danger the father posed to I.S.B. because of his involvement with drugs and alcohol; and (3) the harm of turning I.S.B. over from the only caregiver I.S.B. knew – Silva.

Both parties proffered evidence to support their positions as to the first and second alleged risks of harm. Although the court was not required to state what specific evidence it considered in deciding the issue, *Stock Equip. Co.*, 906 F.2d at 592, it was required to state its decision on the record or in an opinion, Fed. R. Civ. P. 52(a)(1). However, the court made no definite findings as to whether Silva showed by clear and convincing evidence that I.S.B. faced a grave risk of harm because of the alleged abuse Silva experienced, or the father's involvement with drugs and alcohol. Further, although the court acknowledged that, given I.S.B.'s age, I.S.B. may suffer harm if "turned over" from the mother to the father, that harm may not rise to the level of a "grave risk" for purposes of explaining the basis for the otherwise ameliorative measures the court imposed. *See, e.g.*, *Whallon*, 230 F.3d at 459; *Nunez-Escudero*, 58 F.3d at 377; *Friedrich*, 78 F.3d at 1068-69. Because the challenged order does not comply with the basic mandates of Rule 52(a)(1), this Court cannot meaningfully review whether the district court erred in assessing whether the purported harms amount to a grave risk under ICARA.

### III.    CONCLUSION

Accordingly, because the district court did not make definite findings on a pertinent, contested issue – whether, under ICARA, I.S.B. faced a grave risk of harm upon return to Denmark – the Return Order should be vacated, and this case should be remanded for the district court to make the appropriate factual findings and clearly state its legal conclusions. *Pullman-Standard v. Swint*, 456 U.S. 273, 291–92, 292 n.22 (1982).

For these reasons, I respectfully dissent in part.