[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15355

_____

D.C. Docket No. 1:13-mc-21598-WJZ

TIM FUHR,

Petitioner-Appellee,

versus

CREDIT SUISSE AG,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 2, 2017)

Before JORDAN and JILL PRYOR, Circuit Judges, and COOGLER,[*] District
Judge.

PER CURIAM:

_____

[*] The Honorable L. Scott Coogler, United States District Judge for the Northern District
of Alabama, sitting by designation.

Seeking evidence to aid in his defense of a German defamation action, Tim Fuhr applied in the district court under 28 U.S.C. § 1782 for discovery of bank records in Credit Suisse AG's possession. The district court granted the application, authorizing the issuance of a subpoena for the records, and then denied Credit Suisse's motion to quash the subpoena. Credit Suisse appealed, arguing that the district court abused its discretion in granting the § 1782 application, and thus in enforcing the subpoena, because the court failed to properly (1) consider whether Fuhr's application concealed an attempt to circumvent foreign proof-gathering restrictions or (2) weigh the respective comity interests of Switzerland, whose privacy laws apply to Credit Suisse's bank records, and the United States. After careful consideration and with the benefit of oral argument, we conclude that the district court's circumvention and comity analyses both hinged on a clearly erroneous factual finding as to the identity of the holder of a certain Credit Suisse bank account. The district court therefore abused its discretion in granting Fuhr's § 1782 application and denying the motion to quash. Accordingly, we vacate and remand for further proceedings.

## I.    BACKGROUND

For a number of years leading up to this action, Fuhr searched for assets allegedly belonging to Dr. Ambrosius Wolfgang Bäuml, the last heir of a wealthy

Jewish family, the Wertheims, to whose estate Fuhr claims heirship.[1] In 2006, Fuhr's search led his investigator, Gerda Mangliers, to Renate Sgier, a Credit Suisse official in Zurich, Switzerland. Mangliers told Sgier that Bäuml owned a bank account at Credit Suisse and that as Bäuml's heir Fuhr sought the release of information relating to the account.[2] Sgier initially complied, releasing to Mangliers some documents relating to an account that Mangliers claimed belonged to Bäuml. Soon thereafter, Credit Suisse ceased cooperating with Mangliers, having determined that the account in question was not in fact Bäuml's.[3] Several years later, in 2012, Fuhr again requested from Credit Suisse information relating to the account that Bäuml supposedly had owned. Credit Suisse sent Fuhr a letter asserting that an in-depth investigation had uncovered no evidence of a banking relationship between it and Bäuml.

Over the course of his search for Bäuml's assets, Fuhr wrote a number of letters to a third party or third parties alleging that Luis Marimón Garnier, a Spanish national and former Deutsche Bank officer, had wrongfully diverted funds from a Credit Suisse bank account belonging to Bäuml to a Deutsche Bank account

---

[1] Credit Suisse does not dispute that Fuhr is Bäuml's legal heir.

[2] It is unclear from the record whether one or multiple bank accounts are at issue here. For the sake of consistency, we refer to a singular "account."

[3] Credit Suisse asserts that Sgier only complied with Mangliers' request at first because she initially took Mangliers' claim that Bäuml owned a Credit Suisse account at face value without independently verifying it. The crux of the factual dispute in this case is the validity of that assertion.

in Geneva, Switzerland.  In response, Marimón—along with his son and law firm—initiated a defamation suit against Fuhr in Germany, seeking €500,000 in damages and to enjoin Fuhr from claiming that Marimón had either held a bank account for Bäuml's benefit or transferred money away from such account.

To establish his defense in the defamation suit, Fuhr sought to obtain documents from Credit Suisse that purportedly demonstrated the truth of his accusations against Marimón.  To this end, he invoked 28 U.S.C. § 1782, which empowers a district court to order discovery "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782.  Fuhr filed an *ex parte* § 1782 application against Credit Suisse and Deutsche Bank in the Southern District of Florida for discovery of documents pertaining to a bank account that Bäuml allegedly owned.  A magistrate judge issued a Report & Recommendation ("R&R") recommending that Fuhr's application be denied.  Fuhr objected to the R&R inasmuch as it recommended dismissal of his application as against Credit Suisse.  At the time, Credit Suisse had not yet appeared in the matter.  The district court adopted the R&R as to Fuhr's claim against Deutsche Bank, but allowed Fuhr to maintain his § 1782 action against Credit Suisse.

Credit Suisse asserts that it was given no formal notice of the § 1782 proceeding until September 12, 2013, when it was first served with a subpoena. Fuhr does not dispute this assertion.  Shortly after its initial appearance, Credit

4

Suisse moved to quash the § 1782 subpoena.  Adopting a second magistrate judge's R&R, the district court denied Credit Suisse's motion and ordered the bank to produce all responsive, non-privileged documents to Fuhr within five days.  In so doing, the district court determined that enforcing the subpoena would not circumvent Swiss banking privacy law or result in penal violations for Credit Suisse under Swiss law because Bäuml owned the Credit Suisse account at issue, and Fuhr, as Bäuml's heir, was entitled under Swiss law to information regarding the account.  Credit Suisse timely filed this appeal and moved the district court for a stay, which the court denied.  Credit Suisse then moved this Court for a stay, which we granted.

## II.    STANDARDS OF REVIEW

We review for abuse of discretion a district court's decisions to quash a subpoena and to grant an application for assistance under § 1782.  *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015); *Glock v. Glock, Inc.*, 797 F.3d 1002, 1005 (11th Cir. 2015).  A district court abuses its discretion when its ruling "reflects a clear error of judgment," *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015), or it

> applies an incorrect legal standard, follows improper procedures in making the determination, . . . makes findings of fact that are clearly erroneous[,] . . . [or] appl[ies] the law in an unreasonable or incorrect manner. . . . In making these assessments, we review the district court's factual determinations for clear error, and its purely legal determinations de novo.

5

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010). "The credibility of witnesses and findings of fact where the evidence supports more than one conclusion are matters generally reserved for the fact finders and can only be reviewed to determine whether clear error occurred." *Mich. Abrasive Co. v. Poole*, 805 F.2d 1001, 1007 (11th Cir. 1986). "A factual finding is clearly erroneous only if we are left with the definite and firm conviction that a mistake has been committed." *Harris v. Schonbrun*, 773 F.3d 1180, 1182 (11th Cir. 2014) (internal quotation marks omitted). In an action brought under 28 U.S.C. § 1782, a district court also abuses its discretion if it fails to give "required respect to . . . the important considerations of comity underlying § 1782." *United Kingdom v. United States*, 238 F.3d 1312, 1324 (11th Cir. 2001).

### III.    ANALYSIS

*A. We Have Jurisdiction over This Appeal.*

"[A] federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Pursuant to this obligation, we issued a Jurisdictional Question as to Credit Suisse, and then an order to carry the jurisdictional issue with the case. Fuhr moved to dismiss the appeal on the ground that it is premature. He argues that an order denying a motion to quash a subpoena is not "final" within the meaning of 28 USC § 1291 and that a party thus cannot appeal such an order

6

without first defying it and risking contempt sanctions.  This issue is one of first impression in this Circuit.[4]  Although rulings on motions to quash subpoenas ordinarily are not appealable, we conclude that in proceedings brought under § 1782 such rulings resolve the entire case or controversy before the court, and so are "final" in a jurisdictional sense.  Therefore, Credit Suisse's appeal is not premature, and we deny the motion to dismiss.[5]

Under § 1291, we "have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court."  28 U.S.C. § 1291.   "As a general proposition most orders granting or denying discovery are not final orders."  *In re Int'l Horizons, Inc.*, 689 F.2d 996, 1000-01 (11th Cir. 1982) (internal quotation marks omitted).  Thus, "[o]rdinarily, discovery orders without a concomitant contempt holding are not

---

[4] Credit Suisse cites *Consorcio Ecuatoriano de Telecomunicaciones, S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014), and *In re Clerici*, 481 F.3d 1324 (11th Cir. 2007), to argue that a denial of a motion to quash a § 1782 subpoena is a final order under § 28 U.S.C. § 1291, but neither case expressly considered that jurisdictional issue.  "[W]e are not bound by previous exercises of jurisdiction in cases in which our power to act was not questioned but was passed sub silentio."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 307 (1962).

[5] Fuhr asserts that the district court's initial determination that he was entitled to § 1782 relief is the law of the case.  The "law of the case" doctrine "is the rule under which the trial court and appellate courts are bound by any findings of fact or conclusions of law made by the appellate courts in a prior appeal of the case at issue."  *Robinson v. Parrish*, 720 F.2d 1548, 1549-50 (11th Cir. 1983) (internal quotation marks omitted).  This rule does not apply here because there was no prior appeal.  Further, the district court owes no "obedience or adherence" to its own prior ruling.  *Id.* at 1550; *see id.* (rejecting the contention "that a district court must rigidly adhere to its own rulings in an earlier stage of a case").

7

appealable." *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1465 (11th Cir. 1984).

> [A] litigant seeking to overturn a discovery order has two choices. Either he can comply with the order and challenge it at the conclusion of the case or he can refuse to comply with the order and contest its validity if subsequently cited for contempt for his refusal to obey.

*Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*, 680 F.2d 743, 745 (11th Cir. 1982).  As the Fifth Circuit has explained, the rationale behind this requirement is that allowing "immediate appeal from [such] orders . . . would open the door to multiple appeals, thereby offending the policy against piecemeal litigation embodied in the finality rule" set forth in § 1291.  *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 877 (5th Cir. Unit A Mar. 1981) (internal quotation marks omitted); *see also Catlin v. United States*, 324 U.S. 229, 233-34 (1945) ("The foundation of this policy is not in merely technical conceptions of 'finality.'  It is one against piecemeal litigation.").

A number of our sister circuits have held, however, that orders under § 1782 are immediately appealable.[6]  As the Ninth Circuit reasoned, "there is an important

---

[6] *See In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) ("Because the § 1782 order is a sufficiently final order, we have subject matter jurisdiction to hear an immediate appeal from a district court's order granting discovery under that statute."); *In re Republic of Ecuador*, 735 F.3d 1179, 1183 (10th Cir. 2013) ("[Section] 1782 orders are considered final and appealable to this court." (internal quotation marks omitted)); *In re 840 140th Ave. NE*, 634 F.3d 557, 566 (9th Cir. 2011) ("[T]he courts have permitted appeals from a district court's orders under § 1782, even if the complaining party has not subjected himself or herself to contempt sanctions."); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 593 (7th Cir. 2011) ("Although orders granting or

difference between an appeal from an order concerning an ongoing domestic . . .

case and an appeal from an order concerning a request under the procedural

mechanism of § 1782." *In re 840 140th Ave. NE*, 634 F.3d 557, 565-66 (9th Cir.

2011).  Ordinarily, enforcement of a subpoena

> is but one step toward the ultimate resolution of the underlying
> criminal case; it is not the "final" step taken by the district court in
> that criminal case.  In a § 1782 appeal, however, the district court's
> subpoena order is the district court's last, or "final," order because,
> critically, the underlying case in a § 1782 appeal necessarily is
> conducted in a *foreign* tribunal.  Once the district court has ruled on
> the parties' motions concerning the evidentiary requests, there is no
> further case or controversy before the district court.

*Id.* at 566.  "For that reason," the Ninth Circuit explained, "the courts have

permitted appeals from a district court's orders under § 1782, even if the

complaining party has not subjected himself or herself to contempt sanctions."  *Id.*

Although several of the other circuits addressed the appealability of the grant or

denial of the § 1782 application itself, the issue before us is whether a party may

appeal from a district court's order denying its motion to quash a § 1782 subpoena.

---

denying motions to compel discovery normally are nonfinal and therefore appealable only in
extraordinary circumstances, the orders in this case [denying applications for discovery pursuant
to § 1782] are final because there is no pending litigation in the district court."); *Kestrel Coal
Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401, 403 (7th Cir. 2004) ("Orders [issued pursuant to
§ 1782] . . . are final and appealable because they dispose of all issues in the proceeding.");
*Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189 n.1 (3d Cir. 1999) ("Only the discovery dispute
under 28 U.S.C. § 1782 is occurring in the United States.  Therefore, because the underlying
litigation is in [a foreign court], this discovery order is immediately appealable."); *In re
Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993) ("We have jurisdiction over this [§ 1782] appeal pursuant
to 28 U.S.C. § 1291.").

The Ninth Circuit addressed an analogous situation when it concluded that it "ha[d] appellate jurisdiction over the district court's order denying the motion for a protective order" on a § 1782 subpoena. *Id.* at 567.

Similarly, the Second Circuit has held that denials of motions to vacate § 1782 orders and denials of motions to quash subpoenas issued pursuant to such orders are immediately appealable. *See In re Aldunate*, 3 F.3d 54, 55, 57 (2d Cir. 1993) ("The [discovery targets] moved to vacate the district court's [§ 1782] order and quash the subpoenas . . . . We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291."); *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017, 1018 (2d Cir. 1967) (holding that an order denying a motion to vacate a § 1782 order and denying a motion to quash the subpoena was immediately appealable). Unlike Credit Suisse, which appealed only the district court's denial of its motion to quash the subpoena,[7] the *Aldunate* and *Letters Rogatory* respondents had also challenged the underlying orders granting § 1782 discovery. *Aldunate*, 3 F.3d at 55; *Letters Rogatory*, 385 F.2d at 1018. That distinction, however, is immaterial—in either situation, the reason that a § 1782 respondent may "obtain review [without] allowing [it]self to be cited for contempt" is that the § 1782 proceeding "before the district court . . . stands separate from the

---

[7] We acknowledge that Credit Suisse had not been served in and was unaware of the § 1782 proceeding until it was served with the subpoena, which it moved to quash on the basis that the district court erred in granting the § 1782 application.

10

main controversy" litigated in a foreign forum. *Letters Rogatory*, 385 F.2d at 1018.

We find our sister circuits' reasoning—particularly that of the Ninth Circuit, which has specifically addressed the appealability of orders denying motions to prevent the enforcement of § 1782 subpoenas—to be sound and persuasive, and we follow it here. We therefore conclude we have jurisdiction over this appeal.

*B. The District Court Abused Its Discretion in Granting § 1782 Discovery.*

Credit Suisse argues that the district court abused its discretion in denying its motion to quash the subpoena, which the court denied on the ground that granting Fuhr's application for discovery under § 1782 was a valid exercise of the court's discretion. Credit Suisse contends that the district court abused its discretion in granting Fuhr's § 1782 application without adequately analyzing either (1) whether the discovery application concealed an attempt to circumvent foreign proof-gathering restrictions or (2) the respective comity interests of Switzerland and the United States.[8] *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 542-44 (1987) (instructing courts to

---

[8] Credit Suisse also argued on appeal that the district court lacked the power to compel production of the documents that Fuhr sought because the documents were located abroad, and § 1782 does not have extraterritorial reach. After briefing was completed, we held in another case that § 1782 has extraterritorial reach. *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) (holding that § 1782 reaches "responsive documents and information located outside the United States" in the "possession, custody, or control of" the compelled party). Credit Suisse does not argue that *Sergeeva* is inapplicable here, and we perceive no reason why *Sergeeva*'s holding would not apply.

11

undertake a comity analysis before granting discovery on foreign soil); *In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007) (instructing courts to undertake a circumvention analysis before granting a § 1782 application).  Whether the district court abused its discretion in denying Credit Suisse's motion to quash the subpoena thus turns on whether it abused its discretion in granting Fuhr's § 1782 application.

In this case, the circumvention and comity inquiries, though analytically distinct, boil down to the same issue because the district court resolved both by concluding that Swiss law entitles Fuhr to the documents he seeks.  The district court's conclusion rested on two factual findings:  first, that Fuhr is Bäuml's heir, and second, that Bäuml owned a bank account at Credit Suisse.  The first finding is unchallenged on appeal.  As regards the second, having thoroughly reviewed the record, we conclude that the district court clearly erred in finding that Bäuml owned a Credit Suisse account, when it relied on a perceived inconsistency in the evidence that does not in fact exist.  Because that erroneous finding supported the district court's grant of Fuhr's § 1782 application, which in turn supported its denial of Credit Suisse's motion to quash, we conclude that the district court abused its discretion in denying Credit Suisse's motion to quash.

Section "1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to . . . interested persons in proceedings abroad." *Intel*

12

*Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) (internal quotation marks and alterations omitted).  In deciding whether to provide this assistance, a district court may "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65; *see Clerici*, 481 F.3d at 1334 (characterizing this inquiry as a "factor[] to be considered" by the district court "in exercising the discretion granted under § 1782(a)").

In addition, district courts must undertake a "particularized analysis of the respective interests of the foreign nation and the requesting nation" before granting discovery of evidence located on foreign soil to determine whether the party seeking discovery must first resort to procedures under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555.  *Société Nationale*, 482 U.S. at 542-44.

The district court determined that granting Fuhr's § 1782 application would not raise circumvention or comity concerns because Swiss law entitles Fuhr, as Bäuml's legal heir, to the documents he sought.  The court based this determination on a finding that Bäuml owned the Credit Suisse account at issue, citing communications by Credit Suisse employees that seemingly acknowledge Bäuml's ownership of a Credit Suisse bank account.  These communications

13

include the following statement, supposedly made by Credit Suisse's Europadesk

Manager and relayed to Mangliers secondhand on May 10, 2006:

> This is a significant, Jewish property . . . and everything will be done in our power to deliver this to the rightful heirs and true beneficial owners.  Because of the urgency and immediacy of this case we are forced to support Mrs. Sgier and Mrs. Mangliers with this most appropriate investigation.  With regard to the release of bank documents CS-GE22 we must declare that the beneficial ownership of Dr. Bäuml is more important to us than the banking secrecy regarding escrow accounts and mandates.

Doc. 29 at 55.[9]  The communications upon which the district court relied also

include a letter dated May 11, 2006 and addressed to Mangliers, in which Sgier

and Marc Ribas, a Credit Suisse Assistant Vice President, "confirm in writing, that

the bank documentation concerning . . . Mr. Luis Marimón Garnier in connection

with the researches for the location of the assets of Dr. A. Baeuml, have already

been relinquished and handed out to you by the Credit Suisse."  *Id.* at 88.[10]

This evidence, taken alone, would support a finding that Bäuml owned a

bank account at Credit Suisse.  However, Credit Suisse offers an explanation for

why it represented in 2006 that Bäuml had a Credit Suisse account when, as Credit

---

[9] All references to "Doc. __" refer to the numbered district court docket entries.

[10] This excerpt is taken from a translation of the original letter, which was written in German.  Doc. 29 at 87.  Mangliers' notes, dated May 10, 2006, mention this letter:

> Renate Sgier . . . . has now confirmed support from her supervisors and can now confirm in writing the relationship of the accounts of Marimón at [Credit Suisse] with the assets and the beneficial ownership of Dr. Bäuml.  She will send a letter confirming this tomorrow.

*Id.* at 55.

Suisse maintains in this action, in fact he did not.  Daniel Klay, a Credit Suisse attorney, testified by affidavit that Mangliers identified herself to Sgier as the representative of Bäuml's heirs, insisted that Bäuml owned a Credit Suisse account, and requested that Sgier release to her information regarding that account. Klay testified that Sgier provided the requested information because she took Mangliers at her word that Bäuml owned the account; Sgier did not independently verify Mangliers's claim, and the account documents themselves bore no indication of Bäuml's supposed ownership.  Klay further testified that after conducting an investigation, Credit Suisse eventually concluded that no evidence of Bäuml's ownership of the account in question existed, at which point it refused to provide Mangliers any additional information so as to avoid violating Swiss privacy law.

Klay's explanation, if credited, would explain why Credit Suisse initially acknowledged that Bäuml owned a Credit Suisse account and later reversed course.  According to the R&R, which the district court adopted, the court disregarded Klay's affidavit on the sole basis that it was inconsistent with a letter that he and another Credit Suisse employee wrote to Fuhr in 2012.  In that letter, Klay stated, "After the thorough internal investigations we may confirm that we have not found any banking relationship whatsoever with [the] late Dr. Bäuml . . . . [N]o banking relationship existed between Dr. Bäuml and [Credit Suisse] . . . ."

15

Doc. 43-1 at 34.  We see no inconsistency between Klay's affidavit and his letter.

To the contrary, both state that Credit Suisse's internal investigation turned up no

evidence of any banking relationship between it and Bäuml.

Although we "will not ordinarily review the factfinder's determination of

credibility," *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320

(11th Cir. 2011), we may do so where, as here, "we are left with the definite and

firm conviction that a mistake has been committed."  *Harris*, 773 F.3d at 1182

(internal quotation marks omitted).  The district court's erroneous perception of

inconsistency between Klay's affidavit and his letter led the court to construe

Credit Suisse's initial compliance with Fuhr's request for information as evidence

that Bäuml owned a Credit Suisse bank account, without considering Credit

Suisse's explanation of its behavior.[11]  Thus, the district court's finding that Bäuml

---

[11] Neither Fuhr nor the district court has identified any additional evidence supporting a finding that Bäuml owned a Credit Suisse bank account.  Fuhr submitted Mangliers' notes recounting an April 3, 2006 meeting between herself and Marimón, during which Marimón called an employee at Deutsche Bank SAE Barcelona's legal department, who gave

> us information about three accounts of the deceased Dr. Bäuml with Deutsche Bank, which in 1999 (that is nine years after the death of Dr. Bäuml) were closed.  (Apparent diversion or fraud of someone else?)
>
> Luis admits that Maria Wertheim and her nephew and heir Dr. Bäuml were his customers/clients.  He now promises to help uncover all of the assets, which were transferred at that time by Maria Wertheim to Dr. Bäuml and asks [Mangliers] to keep him constantly informed of all events from now on.

Doc. 29 at 51-52.  At most, these notes could reasonably support only a finding that Bäuml owned bank accounts at Deutsche Bank, not the further inference that Bäuml owned a Credit Suisse account.

Fuhr also supplied two declarations of his own containing bald assertions that Bäuml owned a Credit Suisse account.  Conclusory statements made in a plaintiff's affidavit do not,

16

owned a Credit Suisse account—which was necessary to its conclusion that enforcing the § 1782 subpoena would not implicate circumvention or comity concerns—rested on clear error.[12]  As such, the district court abused its discretion in granting Fuhr's § 1782 application and, later, denying Credit Suisse's motion to quash the subpoena.  *Sacred Heart*, 601 F.3d at 1169.

Having concluded that the district court abused its discretion in denying Credit Suisse's motion to quash, we now consider whether we may affirm its judgment on alternate grounds.  "In reviewing an exercise of discretion under the abuse of discretion standard, it is important to examine the premises upon which that discretion was exercised."  *Collins v. Seaboard Coastline R.R. Co.*, 681 F.2d 1333, 1335 (11th Cir. 1982).  As we have recognized:

---

taken alone, constitute substantial evidence.  *See Wilkins v. Commercial Inv. Tr. Corp.*, 153 F.3d 1273, 1277 (11th Cir. 1998) ("There is no substantial evidence to support such a finding . . . only conclusory statements by the plaintiffs in their affidavits.  This mere scintilla of evidence is not enough."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

[12] The district court also determined that even if Fuhr were not entitled to confidential account information under Swiss law, Credit Suisse waived its privacy concerns relating to the information when it partially responded to Fuhr's requests for information.  But under Swiss law, the bank secrecy privilege belongs to the account holder, not the bank.  *See Trade Dev. Bank v. Cont'l Ins. Co.*, 469 F.2d 35, 41 n.3 (2d Cir. 1972) ("Since the Swiss bank secrecy law was enacted primarily to protect the right of privacy of clients, the client is the master of the secret . . . . With the client's consent the bank may of course reveal the client's identity without violating [Swiss law]." (internal quotation marks omitted)); *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 118 (S.D.N.Y. 1981) ("[T]he secrecy privilege . . . is one belonging to the bank customers and may be waived by them.").  Accordingly, Credit Suisse could not unilaterally have waived the privilege through its initial disclosures to Fuhr.

17

> A discretionary decision that falls within permitted bounds, but is based on false premises, raises the question on review as to whether the trial court would have come to the same conclusion using proper premises.  That it could have does not satisfy the inquiry as to whether it would have reached the same result.

*Id.*  Therefore, even if we believed that the district court could have denied the motion to quash the subpoena based on a proper view of the record, to affirm "a discretionary decision that is based on an improper view of the facts or the law" on alternative grounds would usurp "discretion that rightfully belongs to the trial court."  *Id.*  We therefore vacate the district court's order and remand for further proceedings consistent with this opinion.

We emphasize that our decision is narrow.  "Because Congress has given the district courts such broad discretion in granting judicial assistance to foreign countries," we will affirm the district court's decision to either enforce or quash the subpoena based on "extremely limited and highly deferential" review, *Clerici*, 481 F.3d at 1331 (internal quotation marks omitted), "so long as its decision does not amount to a clear error of judgment."  *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288 (11th Cir. 2009).  The district court erred in perceiving inconsistency between Klay's affidavit and his letter.  On remand, we do not dictate how the district court must exercise its discretion in enforcing or quashing the § 1782 subpoena.  In making that determination, however, the district court must either resolve the factual dispute over whether Credit Suisse had an account

18

belonging to Bäuml or else explain why enforcing the subpoena would be appropriate even if Bäuml did not own the account in question.

## V.

For the foregoing reasons, we vacate the district court's order and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**